THERESE SCHULTZ, RESPONDENT, *v.* THEODORE SCHULTZ, APPELLANT.

*Married woman — may sue her husband for an assault and battery — an order for his arrest may be granted in such suit.*

Under section 7 of chapter 90 of 1860, authorizing a married woman to "bring and maintain an action in her own name for damages, against any person or body corporate, for any injury to her person or character, the same as if she were sole," a wife may bring an action against her husband for an assault and battery, and may procure therein an order for his arrest. (DAVIS, P. J., dissenting.)

*Freethy* v. *Freethy* (42 Barb., 641); *Longendyke* v. *Longendyke* (44 id., 366), not followed.

APPEAL from an order made at Special Term denying a motion to vacate an order of arrest.

*Benno Loewy,* for the appellant.

*L. Ansbacher,* for the respondent.

BRADY, J.:

This is an action for assault and battery; the parties are husband and wife. There is no doubt that the papers presented upon the motion contain a sufficient statement of the cause of action; and the question is, therefore, whether the defendant, being the husband of the plaintiff, can be arrested and held to bail in such an action as this.

The Code (sec. 549, sub. 2) authorizes the commencement of an action to recover damages for a personal injury, and the granting of an order of arrest therein generally, containing no provision as to

the suitor who asks for the remedy. It presents nothing, therefore, upon the question suggested. There is nothing either contained in the acts of 1848 and 1849 in relation to married women (see Laws of those years; chap. 200 of 1848 and chap. 375 of 1849) bearing upon the subject here to be discussed.

In 1860, however, an act was passed by the legislature (see Laws of that year, chap. 90) which seems to be an independent act, having no relation whatever to the acts of 1848, 1849.

It was provided by section 7 as follows :

"And any married woman may bring and maintain an action in her own name for damages, against any person or body corporate, for any injury to her person or character, the same as if she were sole."

That section was amended by an act passed in 1862 (see Laws of that year, chap. 172), but not in respect to the provision relating to her right to bring an action, as provided by the act of 1860.

These acts in express terms, therefore, conferred the right and they were acts that treated of the property and rights of a married woman as if a *feme sole* and unmarried, to maintain an action against any person for any injury to her person or character. And it was declared in both acts that the money received upon the settlement of any such action should be her sole and separate property.

There are some adjudications which are supposed to have interpreted the intention of the legislature in regard to the effect of the provision referred to in the statutes of 1860 and 1862, which are not in harmony.

In the case of *Freethy* v. *Freethy* (reported in 42 Barb., 641), it was decided that a wife could not maintain an action against her husband to recover damages for slander uttered by him, and it was declared that the legislature did not intend by the laws of 1862, to which reference has been made, to change the common law rule as to the disability of husband and wife to sue each other at law. It was admitted in that case that the words "any person" in the acts of 1860 and 1862, were very comprehensive, and might, in a proper case, be held to include a husband; but it was said that the question was " whether in view of all that the act contains, and of all the surrounding circumstances, we can infer that the legislature intended that a wife might bring such an action," and further, " if the words used necessarily included the husband, we should not be at liberty to

say that they were inoperative." But the court said, "they do not, and it is our duty to ascertain, if we can, whether the legislature meant to include suits against him."

This is a very well considered case, but it is supposed that the devotion to the rigorous rule of the common law governing the relation of husband and wife, controlled the learned justice, and influenced his decision. He is not the only learned writer who has yielded to the influence of that same emotion and thus circumscribed the objects and purport of the acts of 1848, 1849, 1860 and 1862.

In the case of *Longendyke* v. *Longendyke* (reported in 44 Barb., 366) it was held that a married woman could not sue her husband in an action for assault and battery. The learned justice delivering the opinion in that case commenced by saying that it was conceded by counsel that by the rules of the common law husband and wife could not sue each other in a civil action, and that the question presented was whether that right had been conferred by the statutes of 1860 and 1862, to which reference has been made. It was said also in that case that the right to sue the husband in an action for assault and battery might, perhaps, be covered under the literal language of the section, but the learned justice said that he thought that such was not the meaning and intention of the legislature and should not be the construction given to the act for certain reasons which he assigned, one of which was that it was contrary to the policy of the law and destructive of that conjugal union and tranquillity which it has always been the object of the law to guard and protect. And he said that the act of 1862 conferred the power to sue and be sued in somewhat broader terms than those contained in the act of 1860, but not in a manner, he thought, to lead to the implication that the husband was intended to be permitted to be sued by the wife for injuries to her person and character as in an action for assault and battery or slander.

It is not regarded as discourteous to say that the ill treatment of the wife by the husband, which consists in the violence of an assault and battery, is more destructive to conjugal union and tranquillity than the declaration of a right in the wife to maintain an action against her husband for an assault and battery upon her would be. It is not at all unlikely that it would operate as a restraint upon

militant husbands disposed to indulge in such evidence of conjugal union and tranquillity.

No husband, either by the laws of God or man in any civilized community, has the right to abuse his wife, although it was, perhaps, recognized in earlier times as a principle of the Saxon law and was as contemptible as it was barbarous. But that view no longer prevails. If the husband be disposed to indulge in violence against his wife he should be restrained by all the rules designed to prevent brutality. This class are the only persons who would be affected by the enunciation of the right of a wife to maintain such an action. Men who have no kindred propensities would not fail to recognize the rule as a just one. It would be a condemnation of barbarous acts as well as an expression of the right to indemnity for their commission.

In the case of *Perkins* v. *Perkins* (reported in 62 Barb., 531) it was declared that a husband could not maintain an action at law against his wife to recover pay for services rendered, any more than he could before the acts under consideration were passed. The learned justice who delivered the opinion in that case exhibited his devotion to the common law doctrine which prevailed in this State prior to the passage of the acts mentioned. He said that at common law the husband and wife by marriage became one person. The very being or legal existence of a woman was by the common law suspended during the marriage, or at least was incorporated and consolidated into that of the husband under whose wing and protection she performs every act.

It may not be improper to say that she could not derive any particular benefit from being under the wing and protection of a husband who commits an assault and battery upon her.

It may possibly be that the husband in performing such an act designs to exercise in anticipation all the privileges that might be assumed by any man over a woman, and by committing it, to anticipate as well a similar act by any other person, and from the proud conscientiousness of being the absolute possessor of the woman, to whom he was united by the marriage tie. It may possibly be that the incorporation and consolidation spoken of is of such a character that any husband beating his wife must necessarily beat himself. This is certainly a logical result.

These statutes, it was also declared, were in derogation of the common law, and were to be construed with reference to that law as it existed when they were passed.  The answer to this is, that the object of these statutes was to invade the common law and dispel it, which they have successfully done.  If the common law was to be preserved, then it was not necessary to pass any statutes in reference to the subject.  The statutes were presumably intended to overcome in many respects the disability which the common law had created and to remove the impediments by which married women were surrounded and their rights subverted.  The learned justice admitted that the statute of 1862 conferred in general terms upon a married woman the power to sue and be sued in all matters having reference to her sole and separate property, and also to recover damages for injuries to her person, which damages, he stated prior to the passage of the act, belonged to her husband.  Then giving evidence of the influence upon his mind of the rules of the common law to which he so frequently refers, he concluded by saying that until the highest court of review should determine otherwise, he felt bound to hold that the unity of person created by the marriage contract between the husband and wife had been no farther severed than the statutes in express terms, or by necessary implication, had effected that purpose.

It is respectfully insisted that the statute of 1862 conferred in express terms the right to maintain an action against any person for a personal injury, and by implication, if implication were necessary to be invoked, against her husband, who has no more right to beat her than a stranger.  The marriage tie conferred no such power, no such right and no such privilege.  It is, on the contrary, founded, or supposed to be, if not in fact, upon the proposition of love and affection, which would not only repudiate, but look with abhorence upon any such treatment.

In the case of *Berdell* v. *Parkhurst* (reported in 19 Hun, 358), however, it was held in the second district, that a husband might maintain an action at law against his wife to recover property belonging to him which had been forcibly seized and carried away by her.  The learned justice who delivered the opinion in that case, said : " The plaintiff is entitled to his own property and so is his wife.  He can bring an action for a conversion against any one who

violates his right, to have and possess his own property, unless his wife be a person excepted by the relation of husband and wife. She has the same right of action against all trespassers, unless her husband is the sole exception." And he further said : " It has been decided that a wife may not sue her husband for slander nor for assault and battery, nor for wages," referring to the cases which have been cited herein and criticised, and also the case of *Shuttleworth* v. *Winter* (55 N. Y., 625), which has no bearing upon the subject under consideration, no reference is otherwise made to the acts of 1860 and 1862, in the opinion of the court.

In the case of *Jamieson*, reported in the 11th of Hun (page 38), and decided in this district and in this court, it was held that in an action by a wife for a limited divorce on account of cruel and inhuman treatment by her husband, an order of arrest could be maintained under section 179 of the Code, and there is no substantial difference between that section and section 549 of the Code of Civil Procedure, to which reference has been made. They both provide for orders of arrest in actions for a personal injury.

The learned justice who delivered the opinion in that case said, that the relief in the action must be strictly equitable, but that there was nothing inconsistent between that fact and the fact that the action was for an injury to the person. That the cause of action as alleged and as required by the statute relating to divorces of the kind sought, sprang out of direct personal injury by the husband of his wife, which must be of such a character as to prove cruel and inhuman treatment, or such conduct on his part as to render it unsafe and improper for her to cohabit with him, and further, that upon the facts alleged, the acts of the husband were in part criminal assaults and batteries, frequently repeated, and which inflicted serious repeated injuries upon the person of the plaintiff, which injuries gave her the right of action for the remedy which she pursued, and that her cause of action might be properly described in the language of the Code as one of pure injury to the person. If so, the right of arrest against the defendant was given by section 179 of the Code, on showing that the cause of action existed in the manner described.

This case, therefore, decides that in an action equitable in its character resort might be had to a provision relating to actions at

law for an injury to the person to secure the application of a provisional remedy, namely, the right to arrest; and as the right to arrest is predicated in that case, of the assaults and batteries committed, and which could not be resorted to except in an action relating to them, no difference in principle is discovered between that action and the present except in the prayer for judgment.

In an action for limited divorce the plaintiff, if successful, would obtain a decree of separation and also a money judgment directing the support and maintenance of the wife. The court would in such a case order the payment of a sum of money for the support and maintenance of the wife unless there was some special circumstance in the case which would prevent such a decree.

The legislature did not fail in the laws passed in 1848 and 1849 to exclude the husband from transactions with which it was deemed just or proper he should not be connected, and it was accordingly provided that any married woman might take by gift, grant, devise or bequest from any person other than her husband and hold to her own use, etc. If the words "other than her husband" had not been inserted the act would have authorized the gift or grant from the husband directly, and this was foreseen and prevented because it was not then so intended.

In the act of 1860 (*supra*), by the seventh section, the right was given to any married woman to sue and be sued on all matters having relation to her property which might be her sole and separate property, or which might thereafter come to her by descent, devise, bequest, or the gift of any person except her husband, in the same manner as if she were sole, but in the amendatory act of 1862 (*supra*) the words "except her husband" were omitted thus revoking all restrictions and giving a right unlimited. These features of legislation in the State on the subject of a married woman's disabilities arising from the strict rules of the common law are referred to only for the purpose of showing that when the husband was to be excepted from the provisions expressed it was so declared. The legislature, therefore, proclaimed its own intention in its own form. Nothing of this kind was done in conferring upon a married woman the right to sue and be sued, and if any argument is to be indulged on the question of intention then the result is in favor of the proposition that the husband was not to enjoy amenity from

arrest in any action the wife might bring against him in which the right to arrest was allowed.

But without pursuing this subject further, it is considered quite sufficient to say that the language of the statute is, as conceded by some of the learned judges to whose opinions reference has been made, quite comprehensive enough to include the husband as one of the persons against whom the wife may bring an action for an assault and battery, and who has been relieved from liability under the language of the statute only by judicial resort to what is declared to have been the intention of the legislature on the subject. To allow the right in an action of this character, in accordance with the language of the statute, would be to promote greater harmony by enlarging the rights of married women, and increasing the obligations of husbands, by affording greater protection to the former, and by enforcing greater restraint upon the latter in the indulgence of their evil passions. The declaration of such a rule is not against the policy of the law. It is in harmony with it, and calculated to preserve peace, and in a great measure prevent barbarous acts, acts of cruelty, regarded by mankind as inexcusable, contemptible, detestable.

It is neither too early nor too late to promulgate the doctrine that if a husband commits an assault and battery upon his wife, he may be held responsible, civilly and criminally, for the act, which is not only committed in violation of the laws of God and man, but in direct antagonism to the contract of marriage, its obligations, duties, responsibilities, and the very basis on which it rests. The rules of the common law on this subject have been dispelled, routed, and justly so, by the acts of 1860 and 1862. They are things of the past, which have succumbed to more liberal and more just views, like many other doctrines of the common law which could not stand the scrutiny and analysis of modern civilization. They have gone to that bourne from which no traveler returns, where they must rest forever, undistinguished by a single tear shed over their departure.

The order appealed from should therefore be affirmed, with ten dollars costs and disbursements.

Daniels, J., concurred.

DAVIS, P. J., dissenting :

Several authorities cited by my learned brother BRADY, show that it has been adjudicated by the Supreme Court of this State, that actions of assault and battery and of slander cannot be brought by a wife against her husband. Those adjudications necessarily involved the construction of the statute under which the right to bring such an action is now claimed.

I think they should be accepted by us (after they have stood unreversed for so many years) until the question is otherwise decided by the court of last resort.

There was nothing in conflict with those decisions in holding as this court did, that in an equitable action for limited divorce on the ground of cruel and inhuman treatment, rendering it unsafe for the wife to live with the husband, he could, on a proper case shown, be arrested and held to abide the judgment, because the nature of the action was one for injury to the person.

The order of arrest in such case was in lieu of the old writ of *ne exeat*, by which the court of Chancery held the husband to await its judgment within the jurisdiction of the court.

I heartily concur in the unbounded detestation of wife beaters which my brother BRADY has so forcibly expressed; and I think the legislature might well provide a carefully prepared statute giving direct personal remedies by suit in such cases.

But the court has decided that that has not yet been done, and the doctrine *stare decisis* requires us to leave to the Court of Appeals, or to the legislature, the gallant duty of setting the law free to redress, by civil actions, all the domestic disputes of husband and wife, whether committed by unbridled tongues or angry blows. Their rights, however, to such redress ought I think to be mutual; and to have due regard to the fact that many acts, words and things which would be assaults and, batteries and slanders, between other persons have no such character between husbands and wives. And perhaps some provision should be made for reasonable opportunities for the restoration of domestic peace by amicable settlements free from the liens of litigious attorneys. I must, therefore, in the present state of things, dissent from the conclusion of my brethren.

Order affirmed, with costs and disbursements.