## FREETHY *vs.* FREETHY.

A wife can not maintain an action against her husband, to recover damages for slander.

The legislature did not intend, by section 114 of the code of procedure, nor by section 3 of chap. 172 of the Laws of 1862, to change the common law rule as to the disability of husband and wife to sue each other, at law.

MOTION to set aside a nonsuit which was ordered at the Jefferson county circuit, in June, 1863, before his honor Justice MORGAN. The motion was ordered to be heard in the first instance at the general term.

*Bagley & Wright,* for the plaintiff.

*F. W. Hubbard,* for the defendant.

*By the Court,* FOSTER, J. The plaintiff, who is the wife of the defendant, brings the suit, at law, to recover damages for slander ; and upon the statement of the case, in the opening, the court directed a nonsuit, upon the ground that the wife could not maintain such an action against her husband.

The words charged were such as are clearly actionable as between persons who could be parties against each other in an action for slander ; and the only question is whether the wife can maintain such action against her husband.

The wife could maintain a suit against her husband, *in equity,* for the purpose of obtaining a divorce, or a separation from bed and board ; to restrain him from improper use or destruction of her separate property ; or to compel him, under proper circumstances, to provide a suitable fund for her maintenance; and in like cases; and such suits, except when otherwise authorized by statute, were to be brought by her next friend ; but she could not maintain any action at law against him.

It is contended on the part of the plaintiff, that section 114 of the code of procedure, and section 3 of chapter 172

of the Laws of 1862, have changed the rule, so that a married woman can now sue her husband, at law, for injuries to her person or character. Section 114 of the code has not authorized a wife to sue her husband in any case where she had not previously the right to do so. It has provided that when the action concerns her separate property, and is brought against any other person than her husband, she need not join with him in its prosecution; and if the suit be against him, it may be in her own name, alone, without the intervention of a next friend.

The language of the statute of 1862, section 3, is that " any married woman may bring and maintain an action in her own name, for damages, against any person, or body corporate, for any injury to her person or character, the same as if she were sole." And it is insisted that the words " *any person,*" are so comprehensive as to include the husband, and give the right claimed.

It is true that the words " any person" are very comprehensive, and. might in a proper case be held to include a husband; but the question is, whether, in view of all that the act contains, and of all the surrounding circumstances, we can infer that the legislature intended that a wife might bring such an action. If the words used necessarily included the husband, we should not be at liberty to say that they were inoperative; but they do not; and it is our duty to ascertain, if we can, whether the legislature *meant* to include suits against him. In other words, taking the whole statute and amendments into view, can we assume that it was intended, not only to allow suits to be brought in the name of the wife, alone, for injuries to her person or character, but also to allow her to sue her husband for such injuries? It is not enough. that the case be within the letter of the statute, if it be not also within the intention and spirit of it. (9 *Bac. Abr.* 247. *People* v. *Utica Ins. Co.,* 15 *John.* 358. *Jackson* v. *Collins,* 3 *Cowen,* 89.) "In all doubtful matters, and when the expression is in general terms, statutes

are to receive such a construction as may be agreeable to the rules of the common law, in cases of that nature; for statutes are not presumed to make any alteration of the common law, further or otherwise than the act expressly declares; therefore, in all general matters, the law presumes the act did not intend to make any alteration; for if the parliament had that design, they should have expressed it in the act." (9 *Bac. Abr. title Statutes I. page* 245. *Archer* v. *Rockingham,* 11 *Modern Rep.* 150.)

Where the words of the statute, 2 Westm. c. 11, declared "that all bailiffs and receivers who, in passing their accounts, shall be found in arrears, may be committed to jail," it was held that an infant bailiff or receiver was not within the equity of the statute. (9 *Bac. Abr.* 249. *Stowell* v. *Lord Zouch, Plowd.* 365.)

By the 1 E. 2, st. 2, the breaking of a prison by one confined for felony was made a felony; yet it was held not to apply to one who broke a prison (which was on fire) for the purpose of saving his life; though the excusing him was contrary to the letter of the statute. (9 *Bac. Abr.* 250. *Reniger* v. *Fogassa, Plowd.* 13; *St.* 15 *Hen.* 7, 2 *A.*) And where the statute, 2 Westm. c. 12, authorized the party acquitted upon an appeal to recover damages against *all* who had been abettors of the appeal, it was held not to apply to a son who had abetted his mother in bringing an appeal. (9 *Bac. Abr.* 250. *Partridge* v. *Straunge, Plowd.* 88; 2 *Inst.* 384.)

Our own statute (*Laws of* 1819, *p* 315, *sec.* 6,) declared "that every person who shall be a second time or oftener convicted of petit larceny shall be adjudged to imprisonment in the state prison," &c., and yet it was held that it applied only to a conviction for a second offense committed after the first conviction, (*People* v. *Butler,* 3 *Cowen,* 347,) although the *words* of the statute included any second conviction, whether the offense charged was committed after or before the conviction. It is true that the foregoing de-

cisions were made in reference to penal statutes. None of them, however, turned upon the question of strict construction, but upon the actual intent of the legislature, and are properly applicable to the question now pending. Other statutes, in *pari materia* with one upon which this question arises, and the adjudications upon them, will give us a judicial exposition bearing strongly on this case. Section 399 of the code provides that "a party to an action, &c. may be examined as a witness on his own behalf, in the same manner, and subject to the same rules, as any other witness," &c. ; and there is not a word in the statute excluding husband or wife from being such *witnesses,* in suits between themselves. But the courts hold that section 399 does not authorize husband and wife to be witnesses against each other, in actions between them. (*Smith* v. *Smith,* 15 *How. Pr. Rep.* 165. *Anonymous case,* 25 *id. and the cases therein cited.*)

Section 3 of the act of 1848, to protect the property of married women, as amended by chapter 375 of the laws of 1849, section 1, allows any married female to take by inheritance, or by gift, grant, devise or bequest, from any person &c., and to hold to her sole and separate use, and to *convey* and devise, real and personal property *in the same manner and with the like effect as if she were unmarried, &c.* and there is nothing in the language of the act restrictive of the persons, or classes of persons, to whom she may convey ; but the court of appeals, in *White* v. *Wager,* (25 *N. Y. Rep.* 328,) holds that she can not make a valid conveyance to her husband, notwithstanding the comprehensive words used in the statute ; and that the act does not remove his disability to take and hold land by conveyance to him from his wife.

It is certain that no authority has been given to the husband, by this or any other statute, to sue his wife for any injury to his person or character. And are we to presume that the legislature intended to give such action to the wife alone ?

It is true, as has been suggested, that if the act was not

Freethy *v.* Freethy.

intended to authorize such suits against the husband, he might have been excluded from its operation by express words; but it is also true, and I think more reasonable to suppose, that if the legislature had intended to include such suits, it would have used language clearly denoting such intention.

The court of appeals held, in the case of *White* v. *Wager*, that the common law disabilities of the husband continued, notwithstanding the comprehensive words used in authorizing the wife to convey; and upon the same principle we are bound to hold that the legislature has not disturbed his common law right of exemption from suit, in personal actions in favor of his wife; and that such common law right will remain to him until a legislative enactment shall clearly express the intention to change it.

The mischiefs which the courts supposed would follow the permitting of husband and wife to be witnesses in actions pending between them, or the allowing of husbands to take conveyances from their wives, are but trifling, when compared with such as would result from the litigation between them of suits like the one in question.

When the legislature intends to make such a striking innovation of the rules of the common law, and so much opposed to public policy, and the peace and happiness of the conjugal relation, as would be the case if husband and wife were permitted to sue each other for alleged wrongs to character, it should use such language as will make it clearly manifest; and not leave it to the construction of the courts.

When a power is claimed in derogation of individual right, it ought not to be allowed upon ambiguous construction; at least not upon ambiguous words. (*Wright* v. *Briggs*, 2 *Hill*, 77.)

I have no doubt that the legislature did not intend to make any such change of the common law rule.

The motion to set aside the nonsuit should be denied.

[ONONDAGA GENERAL TERM, January 3, 1865. *Morgan, Bacon* and *Foster*, Justices.]