## FIEDLER v. FIEDLER.

No. 3284.  ·Opinion Filed May 12, 1914.

(140 Pac. 1022.)

1.  **HUSBAND AND WIFE—Injury to Wife—Action Against Husband.** It is the policy of our Constitution and statutes to open the doors of the courts of justice to every person without distinction or discrimination for redress of wrongs and reparation for injuries; and, under our Constitution and statutes, a married woman may maintain an action for injuries to either her natural or statutory rights the same as though she were a *feme sole,* including an action against a former husband for a tort maliciously inflicted during coverture.

2.  **SAME.** In an action by a wife against a former husband for injuries received from a gunshot wound maliciously inflicted by the husband during coverture, the fact that such wounds were inflicted in such manner during coverture constitutes no·defense to the action.

(Syllabus by Harrison, C.)

*Error from District Court, Oklahoma County;*
*George W. Clark, Judge.*

Action by Mattie R. Fiedler against John Fiedler. From a judgment for plaintiff sustaining a demurrer to certain paragraphs of defendant's answer, defendant brings error. Affirmed.

*Reardon & Hereford,* for plaintiff in error.

*Charles H. Garnett,* for defendant in error.

Opinion by HARRISON, C.  This action was begun in the district court of Oklahoma county by Mattie Fiedler against John Fiedler for damages resulting from personal injuries, upon a petition which in part is as follows:

"That on, to wit, the 28th day of February, 1911, at Oklahoma City in said county, the defendant unlawfully, violently, maliciously, and feloniously did assault the plaintiff with a shotgun loaded with powder and buckshot, and did therewith shoot the plaintiff upon the top and side of her head, and did thereby inflict dangerous and painful wounds and injuries upon the plaintiff, by reason of which plaintiff suffered great bodily and mental

pain and anguish, and became and was and still is sick, injured, and disabled from working, and will continue to suffer pain and to be disabled from working for the remainder of her life, all to her damage in the sum of $4,800, and further, by reason of which, the plaintiff was compelled to and did expend a large sum of money for nursing, medicine, and medical treatment in endeavoring to be healed and cured of the said wounds and injuries, to wit, the sum of $200, to her further damage in the sum of $200."

She also claimed punitive damages on account of humiliation and mental suffering in the sum of $5,000.

The defendant answered as follows:

"(1)    Comes now the defendant and denies each and every allegation in plaintiff's petition.

"(2)    And the defendant, further answering, says that on the 28th day of February, 1911, the said plaintiff and defendant were legally married, bearing toward one another the relation of husband and wife under the laws of the state of Oklahoma, and during such marriage relation, existing as aforesaid, no action of damages will lie for the personal torts committed upon the other spouse during the marriage relation.

"(3)    And defendant, further answering, says that on the 12th day of May, 1911, a decree of divorce was granted in the district court of Oklahoma county, which operated as a dissolution of the marriage contract as to both, and said cause is still pending, the time for appeal not having expired; but defendant further alleges that, even if the plaintiff claims she is divorced from the defendant, she can receive nothing in damages, as under the law dissolution of marriage does not permit the plaintiff to sue defendant for a tort committed upon the plaintiff during coverture"

—concluding with a prayer.

Plaintiff demurred to the second and third paragraphs of the answer for the reason that they failed to state a defense to plaintiff's cause of action.    The court sustained the demurrer.    Defendant refused to plead further, stood upon his answer, and appealed to this court upon the one proposition that an action by neither husband nor wife will lie against the other for a tort committed during coverture.    This brings us to a question which, especially under modern jurisprudence, has been the occasion of much profound reasoning and of an equal amount of sophistry.

Fiedler v. Fiedler.

Many carefully reasoned, though we cannot say well reasoned, cases are cited in support of plaintiff in error's contention. From an examination of the authorities cited, they appear to us as in a great measure controlled by the common-law rule under which the entity of the wife was completely lost in the husband. But modern Legislatures, though vainly, it seems, have by plain, explicit, and unambiguous language attempted to break away from the common-law rule and to put the courts out of hearing of the still lingering echoes of barbaric days. The reasons for which the stronger of the more modern decisions have denied one's spouse the right to maintain an action for tort against the other during coverture have been, in the main, based upon public policy, reasoning that to maintain such an action would tend to invade the holy sanctity of the home and shatter the sacred relations between husband and wife, and that therefore, for public policy's sake, such actions should not be maintained; and yet those very decisions, in support of their philosophy, hold that the civil courts are open to parties seeking divorce and alimony, and that the criminal courts are open for the prosecution of either husband or wife for assault and battery, cudgelings, or for shooting each other with shotguns. We fail to feel the force of such philosophy. We fail to comprehend wherein public policy sustains a greater injury by allowing a wife compensation for being disabled for life by the brutal assault of a man with whom she has been unfortunately linked for life than it would by allowing her to go into a criminal court and prosecute him and send him to the penitentiary for such assault. Nor are we able to perceive wherein the sensitive nerves of society are worse jarred by such a proceeding than they would be by allowing the parties to go into a divorce court and lay bare every act of their marriage relations in order to obtain alimony. But, aside from the philosophy on the one side or the other, it appears to us that the plain English language of our Constitution and statutes should enable us to determine what the rights of a married woman are intended to be in such cases. Section 6, art. 2, of the Constitution of Oklahoma, provides:

"The courts of justice of the state shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice."

From the language of this section of the Bill of Rights, it appears to us that the framers of our Constitution clearly intended to open the courts of justice to every person, no matter whom, for redress for wrongs and for reparation for injuries.

In furtherance of such intention, our Legislature, realizing the harsh rules of the common law in such matters, has provided in section 3363, Rev. Laws 1910:

"Woman shall retain the same legal existence and legal personality after marriage as before marriage, and shall receive the same protection of all her rights as a woman, which her husband does as a man; and for any injuries sustained to her reputation, person, property, character, or any natural right, she shall have the same right to appeal in her own name alone to the courts of law or equity for redress and protection that her husband has to appeal in his own name alone. * * *"

Section 2845, Rev. Laws 1910, provides:

"Any person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damage."

Section 2846, *Id.,* defines what is meant by a detriment as follows: "Detriment is a loss or harm suffered in person or property."

The foregoing statutes, it seems to us, are sufficiently clear to define the rights of persons, without discrimination or distinction, and to enable all persons to know just what their rights are and the courts to know just how to adjudicate them. But our Legislature, possibly in contemplation of such contingencies, and in order to avoid the reading into the statutes a meaning not intended, or at least in further emphasis of its intention, has made other provisions. Section 2914, Rev. Laws 1910, reads:

"Words used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears, and except also that the words hereinafter explained are to be understood as thus explained."

And in ·order to make itself still more clear as to its intentions, the Legislature in section 2948, *Id.,* said:

"The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to the laws of this state, which are to be liberally construed with a view to effect their objects ·and to promote justice."

Construing these statutes and constitutional provisions as a whole, we think it is clearly manifest that the legislative intent has been an endeavor to shake off the shackles of the common-law rules as to the rights of married women and to clearly define such rights. Besides, many of the more modern decisions on this question either offer an apology or give way to expressions of regret that the earlier decisions of their respective jurisdictions had announced a doctrine in which they did not fully concur but by which they felt themselves bound.

It is said in *Sykes v. Speer* (Tex. Civ. App.) 112 S. W. 422:

"The adjudications which sustain this view place their holdings upon public policy which refuses to permit any liability for such conduct on the part of the husband committed under such conditions. While the law may and does provide for a criminal prosecution for such violence toward the wife, still there can be no civil liability. It would seem to the writer that if a husband can be held responsible criminally for unjustifiable assault upon one whom the law has placed under his care and protection, and who has for his sake surrendered so many of her civil rights and given up the legal status which she otherwise might sustain, certainly the same considerations of policy would permit her to recover compensation for damages which his brutality may have inflicted upon her, when sought in a proceeding after the dissolution of the marriage relation. But the holdings of the courts which we are compelled to follow have adjudged otherwise, and our duty is plain."

Also *Thompson v. Thompson,* 218 U. S. 611, 31 Sup. Ct. 111, 54 L. Ed. 1180, 30 L. R. A. (N. S.) 1153, was a case in which a divided court, upon a statute somewhat similar but not as well fortified and clearly defined as to its meaning as ours, denied a married woman the right to recover damages for an assault and battery upon her person by her husband. Mr. Jus-

tice Harlan, however, in dissenting from the majority opinion, whose dissenting opinion was concurred in by Mr. Justice Holmes and Mr. Justice Hughes, has this to say:

"Now, there is not here, as I think, any room whatever for mere construction; so explicit are the words of Congress. Let us follow the clauses of the statute in their order. The statute enables the married woman to take, as her own, property of any kind, no matter how acquired by her, as well as the avails of her skill, labor, or personal exertions, 'as absolutely as if she were unmarried.' It then confers upon married women the power to engage in any business, no matter what, and to enter into contracts, whether engaged in business or not, and to sue separately upon those contracts. If the statute stopped here, there would be ground for holding that it did not authorize this suit. But the statute goes much farther. It proceeds to authorize married women 'also' to sue separately for the recovery, security, or protection of their property; still more, they may sue separately 'for torts committed against them as fully and freely as if they were unmarried.' No discrimination is made, in either case, between the persons charged with committing the tort. No exception is made in reference to the husband, if he happens to be the party charged with transgressing the rights conferred upon the wife by the statute."

We are impelled to say that the philosophy of this great jurist appeals to us with more force and soundness and impresses us as more in harmony with the modern legislative intent on this question than the reasonings of courts which hold the contrary. We think a clearly intended right would be denied to a married woman in such cases to hold that she could not recover. By this we do not mean to be understood as holding that a married woman in such cases is entitled to exemplary damages for mental anguish, humiliation, etc. We doubt whether such doctrine would be sound. These are matters which, in the very nature of things, she takes chances on, assumes the risk of, when she enters into the marriage contract and upon the marriage relations. But, upon the whole, we are unable to perceive wherein either public policy, or society, or the sanctity of the home, or the sacred relations of marriage, is better protected by denying her a reasonable compensation for injuries maliciously and feloniously inflicted upon her by a husband with a shotgun loaded with

buckshot, or that either of the aforesaid sacred institutions is worse injured by allowing her a just and reasonable compensation in such cases, than by allowing her to go into the criminal courts and send him to the penitentiary, or into a divorce court and publish their entire married life to the world. True, it is argued that to allow recovery in such cases would be to open the avenues to every conceivable species of fraud, deception and perjury, through which designing women would be enabled to go into courts and recover for alleged wrongs which they had never sustained. But the answer to this argument is that the divorce courts open the same avenues in order to recover undeserved alimony. And again, should a woman, who has been crippled or maimed or disabled for life through the malicious, wanton, and willful assault of a brutal husband, go into court and ask for alimony for her support, there is not a court in Christendom but what would award her a more liberal alimony than if she were a strong, healthy, able woman. Now, upon what theory would such additional alimony be allowed? Unquestionably it would be on the ground of the tort she had received at the hands of her husband. We can see no difference in principle between an indirect and a direct recovery for tort.

We believe, therefore, that paragraphs 2 and 3 of defendant's answer stated no defense to plaintiff's cause of action, and that the demurrer thereto was properly sustained.

The judgment sustaining the demurrer should be affirmed.

By the Court: It is so ordered.