### LACY CROWELL v. W. J. CROWELL.

(Filed 8 December, 1920.)

**Husband and Wife— Actions— Assault— Venereal Disease—Statutes—Damages—Punitive Damages.**

While at common law a wife could not maintain an action without joining her husband, or against him personally, this was changed by statute, Rev., 408, with relation to her separate property, and by the Legislature of 1913, including the right as to personal injuries and torts; and now she may maintain her action against her husband as in assault, for coercing her and willfully and maliciously giving her a venereal disease, in which case, punitive as well as compensatory damages may be awarded.

ALLEN, J., concurring in result; WALKER and HOKE, JJ., dissenting.

APPEAL by defendant from *Lane, J.,* at May Term, 1920, of MECK-LENBURG.

This is an action by the wife against the husband, alleging in her complaint the marriage and their living together as man and wife; that

CROWELL *v.* CROWELL.

the defendant contracted a venereal disease, and that he "took advantage of his marital relation with said plaintiff and infected her with said vile and loathsome disease," and asks for judgment "for actual and punitive damages."

The defendant filed a written demurrer to the effect that the complaint showing upon its face that the parties were man and wife prior to, and during all the time of the acts complained of, that "the complaint does not contain facts sufficient to constitute a cause of action." And further, that said action is "both without law to warrant the maintenance thereof, and also against the public policy of the State."

The court overruled the demurrer, and thereupon the defendant filed an answer, and upon the issues submitted, the jury found that the defendant "wrongfully and recklessly infected the plaintiff with a loathsome disease, as alleged in the complaint," and assessed the plaintiff's damages at $10,000; and further, that at the institution of this action the defendant was about to dispose of his property and remove it from this State for the purpose of defrauding the plaintiff.

The defendant excepted, and appealed from overruling the demurrer; for refusal to set aside the verdict; for permitting the plaintiff to testify that the day before they separated she informed him that he had infected her with venereal disease; and to testify that she estimated the value of his property to be worth between $25,000 and $50,000, and that he was disposing of it very rapidly, getting her to join in deeds for most of the property, and that he told her that he was going to Cuba to make his home, and to set up a bar-room.

The defendant also excepted to the following paragraphs in his Honor's charge:

1. "If you find as facts from the evidence, and by its greater weight, that the defendant knew that he was infected with a foul and loathsome venereal disease, and thereafter, although having such knowledge, he wrongfully had sexual intercourse with the plaintiff, and thereby infected her with said disease, that he did so willfully and recklessly—that is, in reckless and wanton disregard of the plaintiff's rights, being indifferent to her welfare, and not caring whether he infected her or not—then you should answer the first issue 'Yes.' "

2. "She would be entitled to a just and reasonable compensation for whatever injuries she may have sustained as a necessary and proximate result of the defendant's wrong. She would be entitled to a just and reasonable compensation for any physical or mental suffering which followed as a necessary and proximate result of the defendant's wrong."

3. "If you come to the issue of damages, you might, if in your discretion you saw fit, allow the plaintiff punitive damages."

Judgment, and appeal.

CROWELL *v.* CROWELL.

*Stewart & McRae and John M. Robinson for plaintiff.*
*Thaddeus A. Adams for defendant.*

CLARK, C. J.   The defendant made no motion to nonsuit, and does not contend that there was not sufficient evidence to justify the verdict on the first issue, "Did the defendant wrongfully and recklessly infect the plaintiff with a loathsome disease, as alleged in the complaint." He submitted no requests for instructions. The exceptions to the evidence do not require discussion. Practically the only point presented by this appeal is whether or not a cause of action is alleged in the complaint.

Paragraph 5 of the complaint alleges "that the defendant, by reason of his illicit relations with lewd and profligate women, contracted a venereal disease of a foul and loathsome character, and of a highly infectious and malignant nature, and although *he well knew that he was so infected,* and well knew the character of said disease and its dangerous and infectious nature, he *concealed from the plaintiff the fact that he was* so infected with said disease, and on or about the........day of..............., 1919, *committed an assault* and *trespass upon the person of the plaintiff,* and infected her with said foul and loathsome disease, injuring her and damaging her as hereinafter set out."

There can be no question in this day that if the defendant had violently assaulted his wife and caused serious bodily injury to her person, and humiliation to her, she could maintain an action for damages against him. Even under the obsolete ruling of the courts (for it was never statutory) that a husband could chastise his wife with immunity, there was an exception that he was liable if he caused her serious bodily harm or permanent injury.

In *S. v. Monroe,* 121 N. C., 677, it was held that a druggist committed an assault when he dropped croton oil on a piece of candy and gave it to a third party. It was a far greater assault for the husband to communicate to his wife, while concealing from her the fact that he was infected therewith, a foul and loathsome disease—which has caused her serious bodily injury, and which the medical books hold to be a permanent injury of which she can never be entirely cured.

In *S. v. Fulton,* 149 N. C., 485, the Court held that the husband was indictable for wantonly and maliciously slandering his wife under Rev., 3640, now C. S., 4230, which made it indictable for "any one to slander an innocent woman." The objection was there taken that this did not apply to the husband, by reason of the marriage relation, and that this had been so held in *S. v. Edens,* 95 N. C., 693. The Court overruled *S. v. Edens,* but held, by a divided Court, that the defendant in the *Fulton case* had a vested right to rely upon *S. v. Edens.*

The plaintiff, who was 22 years of age and living with her father at the time of her marriage, was shown to be of good character at that time, and ever since, by a minister of the gospel, and other witnesses, and even the defendant testified that "the plaintiff was a virtuous woman and was faithful to me during our married life, and yet is so far as I know—I don't say otherwise." He further testified that he was divorced from his first wife; that he committed adultery while living with his second wife, and furnished her with witnesses to prove it by which she got a divorce upon that ground; that he had had trouble in Gastonia on account of a woman, and says "women have always been my trouble. Have recently been convicted of being drunk and carrying a pistol." It was stated on the argument that the defendant has recently been convicted in Virginia, under the White Slave Act, and sentenced to 2 years, and has also been convicted and sentenced in that State for abduction of a girl under 16, and that case is pending on appeal.

The defendant also admitted, on cross-examination, that he has had venereal disease, and said: "Sometimes it takes me longer to get over a case of gonorrhea than others. Sometimes it takes me a month, sometimes four months, and sometimes six months." . . . "On Sunday after this suit was started I had a lewd woman in my automobile, and passed the plaintiff's house four times; I had my arm around the back of the seat."

Notwithstanding that the defendant had testified on the cross-examination that his wife was a virtuous woman, he intimated on being recalled that he was forced to marry her because she had become pregnant by him. The plaintiff testified that he did not have sexual intercourse with her until after the marriage, and that he tried to get her to procure a divorce from him, offering to furnish her with witnesses to prove his adultery while living with her. He did not deny this, and admitted that he had done this with his second wife to enable her to get a divorce. The testimony of the plaintiff was that she had contracted the disease from her husband, and as to her humiliation and physical injury sustained thereby, and the physician testified that she was thus infected, and that his diagnosis was confirmed by clinical findings and by laboratory tests of another expert. The defendant testified that on one occasion "plaintiff came to my office and could not get in; I was locked in, the woman in there got out."

As the plaintiff's counsel well said, aside from the question of assault, it is a well settled proposition of law that a person is liable if he negligently exposes another to a contagious or infectious disease, *Skillings v. Allen,* 173 (Minn.) N. W., 663, *A fortiori* the defendant would be liable in the present case whether guilty of an assault or not, and independent of the fraud or concealment. In *Schultz v. Christopher,* 65

Wash., 496, and in *Bandfield v. Bandfield,* 117 Mich. 80 (cases cited by the defendant), the Court recognized that the infection of the wife with venereal disease by the husband was a tort, but held that upon their statutes, which differ from those in this State, the wife could not sue her husband for a tort upon her person. But in *Prosser v. Prosser,* (1920), 102 S. E. (S. C.), 787, under a statute which is *verbatim,* our Rev., 408, C. S., 454, it was held that "under such statute a married woman can maintain an action in tort against her husband for an assault upon her," holding that while it was otherwise at common law, a proper construction of this statute "gives to a wife every remedy against the husband for any wrong she might suffer at his hands. More than this, a wife has a right in her person, and a suit for a wrong to her person is a thing in action; and a thing in action is property, and is her property, and the action is therefore maintainable under *Messervy v. Messervy,* 82 S. C., 550."

In *Graves v. Howard,* 159 N. C., 594, *Allen, J.,* said: "Rev., 408, further provides that the wife may maintain an action without joinder of her husband: (1) when the action concerns her separate property; (2) when the action is between herself and her husband; and our Court has construed this section to confer upon the wife the right to maintain an action against her husband, *Shuler v. Millsaps,* 71 N. C., 297; *McCormac v. Wiggins,* 84 N. C., 279; *Manning v. Manning,* 79 N. C., 293; *Robinson v. Robinson,* 123 N. C., 137; and *Perkins v. Brinkley,* 133 N. C., 158."

The defendant objects that this applies only to property rights concerned in actions, but damage or injury to her person is a property right. Our statute, 1913, ch. 13, provides: "The earnings of a married woman, by virtue of any contract for her personal service, *and any damage for personal injuries or other torts sustained by her,* can be recovered by her suing alone, and such earning or recovery shall be her sole and separate *property* as fully as if she had remained unmarried." This gives her the right of recovery of damages for *any* personal injury or other tort sustained by her, and there is no exemption of her husband from liability in an action by her which she is authorized to bring under Rev., 408; C. S., 454. As long as the Court held (*Price v. Electric Co.,* 160 N. C., 450) that the recovery by the wife of damages for personal injuries was the property of the husband, it was useless for her to sue him under the right given by Rev., 408 (2), but the act of 1913, ch. 13, making such damages her property was promptly passed at the first session of the General Assembly thereafter curing this and enabled the wife to maintain an action against her husband to recover damages for injuries committed upon her person by him.

For the same reason that in *S. v. Fulton, supra,* the Court held that the statute making *"any one"* liable to indictment for the slander of a virtuous woman made the husband liable to such indictment, notwithstanding the common-law theory, and even the express decision in *S. v. Edens, supra,* to the contrary, we must hold that the statute of 1913, ch. 13, and Rev., 408, gave the wife a right to recover damages for injuries to her person, or for other torts sustained by her, against her husband as fully as against any one else, as was held in *Prosser v. Prosser, supra.*

In 26 R. C. L., 577, it is said: "The fact that a case is novel does not operate to defeat a recovery if it can be brought within the general rules applicable to torts." In *Brown v. Brown* (1914), 88 Conn., 42, that Court pertinently says that "if the wife may sue for a broken promise, why may she not sue for a broken arm?" Like the South Carolina Court, in the *Prosser case,* it holds that her claim for damages is a property right. It says: "The tort gives rise to a claim for damages. Such a claim is *property,* not in her possession, but which she may by action reduce into possession, just as she might before her coverture have had an action against him for such a tort committed before that event. The husband's delict, whether a breach of contract or a personal injury, gives her a cause of action. Both necessarily follow from the fact that a married woman now retains her legal identity and all her property, both that which she possessed at the time of marriage and that acquired afterwards."

In *Johnson v. Johnson* (Ala.), 77 So., 335, the Court held that the statute of that State authorizing the wife to recover damages for injuries to her person or reputation made the damages her separate property, and the statute which authorized her to sue alone for their recovery, authorized her to sue her husband for such injuries and torts, abrogating the common-law fiction of identity between husband and wife to that extent. The statutes of that State upon that subject are almost identical with ours above quoted.

*Fielder v. Fielder,* 42 Okla., 124, held that a married woman could maintain an action against her husband for injuries received from a gun shot wound inflicted during coverture. That case, referring to *Thompson v. Thompson,* 218 U. S., 611, pointed out that the latter decision was based upon the statutes for the District of Columbia, which in this respect are not as liberal and progressive as in most of the States, and the Court concurred in the dissenting opinion of *Justices Harlan, Holmes,* and *Hughes* (which, in the opinion of the writer, was the "big end" of the Court at that time).

In *Gilman v. Gilman,* 78 N. H., 4, it was held that the statute of that State, providing that a married woman may "sue and be sued on any

contract by her made, or for any wrong done, as if she were unmarried," put husband and wife on an equality as to property, torts, and contracts, and that she could maintain an action against her husband for assault as fully as she could against any one else. In *Fitzpatrick v. Owens,* 124 Ark., 167, the Court held that a married woman may maintain an action against her husband for a tort, in that case for an assault, and when it resulted in a wrongful death her administrator could maintain an action therefor. And this is the trend of recent decisions throughout the country, 13 R. C. L., 1397; and notes 1915 D, p. 73.

As to the suggestion that the defendant could be indicted, that was a matter for the State, which has not thus proceeded, and a conviction would be no reparation to the plaintiff. Besides, if the unity does not prevent an indictment, why should it prevent a civil action?

At common law neither civil nor criminal actions could be maintained by the wife against the husband because of the alleged unity of persons of husband and wife, or rather the merger of the wife's existence into the husband's. The real reason was that by marriage the wife became the chattel of the husband (as a reminder of which to this day at a marriage some man "gives the woman away"), and therefore her personal property by the fact of marriage became his, as was the case in this State as to wives until the Constitution of 1868, though as to slaves it had ceased on their emancipation in 1865. The owner lost the right to chastise his slaves in 1865, but the wife was not emancipated from the lash of the husband till nine years later, in 1874, when in *S. v. Oliver,* 70 N. C., 60, *Settle, J.,* tersely said, "We have advanced from that barbarism." His authority for making such ruling was that ch. 5, Laws 1715, and ch. 133, Laws 1778, now C. S., 970, adopted such parts only of the common law which are "not abrogated, repealed, or become obsolete." So much of the common law as exempted the husband from liability civilly or criminally for assaults, slanders, or other torts or injuries committed by him on his wife is invalid now, both because it has become obsolete and at variance with the customs and sense of right, and with our form of government, which confers "equality before the law" upon all, and because it has been expressly abrogated and repealed by the statutes above quoted, which confer upon the wife the right to sue and be sued alone, "when the action is between herself and her husband," and to recover, suing alone, damages for her personal injuries or other torts sustained by her (act 1913, ch. 13, now C. S., 2513) without exempting her husband from such liability.

The true ground for the exemption formerly of the husband from liability to the wife for his torts, and for his assumption of her property, as already said, was because by the marriage she became his chattel. The fanciful ground assigned for this doctrine, which was far more unjust to

married women than that prevailing in other countries under the Civil law or even in the countries under the rule of the Koran, is stated by some of the old writers to be the words in Genesis 2 :23-24 : "And Adam said, 'this is now bone of my bones and flesh of my flesh,' " adding that a man and wife "shall be one flesh." And now, "speaking for myself and not by commandment" (as St. Paul said on more than one occasion, 1 Cor., 7 :6, and 2 Cor., 8 :8), this statement was made by Adam and not by Deity, and is untrue as a matter of fact, besides Adam was not a law-giver, but the most culpable lawbreaker known to all the ages. The consequence of his lawbreaking, according to the belief of multitudes, was the greatest and most universal of any man, and according to ortho-dox teachings, affects all mankind since, and if we are to credit the vision of the great English poet, had its immediate effect upon the inani-mate world as well:

> "Earth felt the wound; and nature from her seat,
> Sighing through all her works, gave signs of woe
> That all was lost."—*Paradise Lost*, Book IX, line 782.

It is more than passing strange that in this day of enlightenment, this statement by the greatest malefactor of history, who could frame no laws for any future day and generation, nor keep those made for him-self, should be solemnly cited to justify the continuance of age-long injustice and degradation to one-half of the human race. The origin of such treatment was perhaps natural in the economic conditions of a barbarous age, when superior physical force made the wife the slave of the husband. But those conditions have passed. All the conditions and customs of life have changed. Many laws have become obsolete, even when not changed by statute, and the Constitution, as this has been, and no principle of justice can maintain the proposition in law, or in morals, that a debauchee, as the defendant admits himself to be, can marry a virtuous girl, and, continuing his round of dissipation, keep up his intercourse with lewd women, contracting, as he admits, venereal disease, communicate it to his wife, as the jury find, subjecting her to humilia-tion and ruining her physically for life, and seeking to run off with all his property, abandoning her to utter indigence; yet be exempted from all liability by the assertion that he and his wife are one, and that he being that one, he owes no duty to her of making reparation to her for the gross wrong which he has done her.

It must be remembered that there is not, and never has been, any statute in England or this State declaring that "husband and wife are one, and he is that one." It was an inference drawn by courts in a barbarous age, based on the wife being a chattel, and therefore without any rights to property or person. It has always been disregarded by

courts of equity. Public opinion and the sentiment of the age as expressed by all laws and constitutional provisions since have been against it. The anomalous instances of that conception, which still survive, in some courts are due to construing away the changes made by corrective legislation or restricting their application.

Whether a man has laid open his wife's head with a bludgeon, put out her eye, broken her arm, or poisoned her body, he is no longer exempt from liability to her on the ground that he vowed at the altar to "love, cherish, and protect" her. Civilization and justice have progressed thus far with us, and never again will "the sun go back ten degrees on the dial of Ahaz." Isaiah, 38 :8.

No error.

ALLEN, J., concurring in result: At common law the wife could not maintain an action of any kind against her husband.

This doctrine was founded upon the idea that matrimony is "an honorable estate, instituted of God in the time of men's innocency, signifying to us the mystical union that is between Christ and his Church," and that those who assume its obligations "are no more twain but one flesh." See *Freeman v. Belfer,* 173 N. C., 582.

The husband and wife become one person by marriage, and as one cannot sue himself, neither could the husband sue the wife, nor the wife the husband, and as we have substantially adopted the common law the principle prevails with us, except as it has been changed by statute.

Changes in the legal status of husband and wife began prior to 1868, but by the Constitution of that year the wife became the owner of her separate estate freed from the control of her husband, and in order that these rights of property might be protected it was provided (Rev., 408), "That the wife may maintain an action without the joinder of her husband: (1) when the action concerns her separate property; (2) when the action is between herself and her husband; and our Court has construed this section to confer upon the wife the right to maintain an action against her husband." *Graves v. Howard,* 159 N. C., 598.

It thus appears that by this radical change the wife may now sue her husband for breach of contract to recover her property, and for damages to her property, all of which is contrary to the common law.

The Legislature has also removed the disability to contract, and in 1913 provided that her "earnings" for personal services and "any damages for personal injuries, or other torts sustained by her," shall be her separate property and "can be recovered by her suing alone."

I think the weight of authority is that these statutes, which are to be found in most of the States, do not give a right of action against the husband for personal injuries, but simply permit her to sue alone on causes of action theretofore recognized, but as the denial of the right of

action has always been based on the unity of the person, and as this unity has been destroyed so far as her right to maintain an action is concerned, I see no reason for holding that she cannot maintain an action against her husband for a wanton, willful injury, which permanently impairs her earning capacity, when the statute says she is entitled to her earnings and may sue alone to recover them.

If the wife can sue the husband in contract, or to recover property, or for injury to her property, why may she not maintain an action for impairment of health, which decreases her earning capacity, caused by the wanton conduct of her husband?

The danger to the domestic tranquility is not greater in the one case than in the other, and at last this must depend not on common law or statute but on mutual respect, confidence, forbearance, and affection.

*Brown v. Brown,* Anno. Cases, 1915, D (Conn.), and *Feidler v. Feidler,* 42 Okla., 124, are direct authorities for the position herein stated, and in *Thompson v. Thompson,* 218 U. S., 611, a case relied on by the defendant, there is a vigorous dissent by *Justice Harlan,* concurred in by *Justices Holmes and Hughes,* which he concludes as follows: "Congress, under the construction now placed by the Court on the statute, is put in the anomalous position of allowing a married woman to sue her husband separately, in tort, for the recovery of her property, but denying her the right or privilege to sue him separately, in tort, for damages arising from his brutal assaults upon her person. I will not assume that Congress intended to bring about any such result. I cannot believe that it intended to permit the wife to sue the husband separately, in tort, for the recovery, including damages for the detention of her property, and at the same time deny her the right to sue him separately for a tort committed against her person."

. WALKER and HOKE, JJ., dissenting: This case is so distressing and repellant in its details that it is difficult, as it seems, to give it that dispassionate consideration which every case should have. There is not a word of condemnation too severe to be applied to the conduct of the defendant. He has subjected himself to the penalties of the criminal law, but not to prosecution by his wife, and simply because that unity of person which has always been attributed to the marital relation still exists, notwithstanding that married women have been endowed with so many property rights, as they should have been; which appear to furnish the only argument for the destruction of that unity so important for the preservation of the peace and happiness of the home. Married women owned, and were constantly acquiring, property by gift, inheritance, and purchase just as in the case of men, and it was clearly their right to have and possess it freed from the control of their husbands, and this has now become a legal right with a few certain exceptions. But the

Legislature has wisely refused to abolish that legal unity existing between man and wife, which was deemed by it so essential in securing the blessings of the marital union, in which, not only the principles, but society and the community are so deeply concerned. The privacy of the home is as sacred as it ever was, and it is often better "to draw the curtain, shut out the public gaze, and leave the parties to forget and forgive," as said by *Justice Settle* in *S. v. Oliver,* 70 N. C., 60, at p. 61, and this is done from motives of public policy, in order to preserve the sanctity as well as the peace and tranquility of the domestic circle. It concerns too deeply the public welfare that this should be done, for *us* to change it without a mandate from the Legislature, which makes and controls the public policy of the State, and for the reason we have given, among others, it has withheld its consent to any such amendment of the law. It has been considered so essential to the well-being of the community that this doctrine of the marital unity should continue to be the rule with us, that those who have the only power to legislate and abolish it have refrained from doing so. We should not attempt to do that which will effect radical changes in the law by mere construction, for with the policy, wisdom, or justice of the legislation in question this Court can have no rightful concern. It must take the law as it has been established by competent legislative authority. It cannot, in any legal sense, make law, but only declare what the law is, as established by competent authority. It, therefore, has always been considered as utterly opposed to our public policy to change the law in this respect.

At common law no cause of action arose in favor of either husband or wife by reason of any injury to the person or character of one committed by the other, *Thompson v. Thompson,* 218 U. S., 611; *Peters v. Peters,* 156 Cal., 32; *Abbott v. Abbott,* 67 Me., 304; *Bandfield v. Bandfield,* 117 Mich., 80; *Strom v. Strom,* 98 Mich., 80; for instance, libel or slander. This doctrine of nonliability is founded not on the inability of the one spouse to sue the other, but on the principle that husband and wife are one person in law, and it is well exemplified in the cases which hold that a wife, after an absolute divorce from her husband, though she is then fully capable of suing him, still can maintain no action against him for a tort or wrong committed by him during the marriage relation against her person or character. *Henneger v. Lomas,* 145 Ind., 287; *Libby v. Berry,* 74 Me., 286. So it is generally recognized that the Married Woman's Property Acts, which enlarge the rights of married women even to such an extent as to permit a wife to sue her husband, do not entitle her to sue him for an injury to her person or character after their marriage, for the reason that whether a husband is liable to his wife therefor is not a mere question of procedure, but of substantive right. *Schultz v. Christopher,* 65 Wash., 496; *Brown v. Brown,* 88 Conn., 42; *Smith v. Smith,* 73 Mich., 445; *Fiedler v. Fiedler,* 42 Okla.,

124. And this is held true under a statute authorizing the wife to bring and maintain an action in her own name for any injury to her person or character, the same as if she were sole; such a statute merely changes the procedure, but gives no new right, and applies only to such causes of actions as could be maintained by the husband and wife as coplaintiffs before the statute took effect. *Coleman v. Burr,* 93 N. Y., 17.

On account of the unity of husband and wife, no cause of action arises at common law in favor of a wife against her husband for an assault and battery or personal injury inflicted by him on her during coverture. Thus no cause of action arose in favor of a wife against her husband from his wrongful act in forcibly taking her to an insane asylum, nor would a right of action for damages arise in favor of a wife from his wrongfully and maliciously inoculating her with a venereal disease, *Deeds v. Strade,* 6 Idaho, 317, nor for false imprisonment and malicious prosecution. This denial of the existence of a cause of action for assault and battery was not based on the incompetency of a wife to maintain an action at law against her husband on account of the relation of the parties to each other, and therefore a wife could not, after divorce, though the divorce removed the common-law disability of the wife to sue her husband, maintain an action for assault and battery committed by him prior to the divorce. It is generally held that statutes authorizing a wife to maintain an action against her husband only authorizes her to maintain alone such actions as previously could be sustained when brought by the husband alone, or by the husband and wife jointly. On the same reasoning which denies the right of a wife to maintain an action against her husband, it has been held that a husband cannot maintain an action against his wife for injuries inflicted on him either at common law or under statutes giving her the right to separate property, and permitting them to contract with each other.

But this question of the unity of person existing between husband and wife has been recently considered by the United States Supreme Court in the case of *Thompson v. Thompson,* 218 U. S., 611 (54 L. Ed., 1180); 21 Anno. Cases, 921; 30 L. R. A. (N. S.), 1153; Aff. 31 App. Cases (Dist. of Col.), 557 (14 Anno. Cases, 879), which was a civil action by a wife to recover damages from the husband for an assault and battery committed on her person. The Court there held as follows: The common-law relation between husband and wife was not so far modified as to give the wife a right of action to recover damages from her husband for an assault and battery committed by him upon her person, by D. C. Code, p. 1155, authorizing married women "to sue separately for the recovery, security, or protection of their property, and for torts committed against them, as fully and freely as if they were unmarried. The act of Congress applicable to the District of Columbia is not less extensive or comprehensive than are our statutes in regard to

the rights of married women, if it does not cover much less ground. We cannot refrain from referring extensively to the reasons given by that exalted tribunal, in its able and learned opinion, as delivered by *Justice Day,* though we might quote all of it advantageously in this case. That Court said that the limitation upon the wife's right of action imposed in the requirement of the common law that the husband should join her was removed by the statute, and she was permitted to recover separately for such torts, as freely as if she were still unmarried. The statute was not intended to give a right of action as against the husband, but to allow the wife, in her own name, to maintain actions of tort which, at common law, must be brought in the joint names of herself and husband. This construction is obvious from a reading of the statute in the light of the purpose sought to be accomplished. It gives a reasonable effect to the terms used, and accomplishes, as we believe, the legislative intent, which is the primary object of all construction of statutes. It is suggested that the liberal construction insisted for in behalf of the plaintiff in error in this case might well be given, in view of the legislative intent to provide remedies for grievous wrongs to the wife. Apart from the consideration that the perpetration of such atrocious wrongs affords adequate grounds for relief under the statutes of divorce and alimony, this construction would, at the same time, open the doors of the courts to accusations of all sorts of one spouse against the other, and bring into public notice complaints for assault, slander, and libel, and alleged injuries to property of the one or the other, by husband against wife, or wife against husband. Whether the exercise of such jurisdiction would be promotive of the public welfare and domestic harmony is at least a debatable question. The possible evils of such legislation might well make the law-making power hesitate to enact it. But these and kindred considerations are addressed to the legislative, not the judicial, branch of the Government. In cases like the present, interpretation of the law is the only function of the courts. It must be presumed that the legislators who enacted this statute were familiar with the long-established policy of the common law, and were not unmindful of the radical changes in the policy of centuries which such legislation as is here suggested would bring about. Conceding it to be within the power of the Legislature to make this alteration in the law, if it saw fit to do so, nevertheless such radical and far-reaching changes should only be wrought by language so clear and plain as to be unmistakable evidence of the legislative intention. Had it been the legislative purpose not only to permit the wife to bring suits free from her husband's participation and control, but to bring actions against him also for injuries to person or property as though they were strangers, thus emphasizing and publishing differences which otherwise might not be

CROWELL *v.* CROWELL.

serious, it would have been easy to have expressed that intent in terms of irresistible clearness. We can but regard this case as another of many attempts which have failed to obtain by construction radical and far-reaching changes in the policy of the common law, not declared in the terms of the legislation under consideration. Some of the cases of that character are: *Abbott v. Abbott,* 67 Me., 304; *Schultz v. Schultz,* 89 N. Y., 644; *Freethy v. Freethy,* 42 Barb., 641; *Peters v. Peters,* 42 Iowa, 182. Nor is the wife left without remedy for such wrongs. She may resort to the criminal courts, which, it is to be presumed, will inflict punishment commensurate with the offense committed. She may sue for divorce or separation and for alimony. The Court, in protecting her rights and awarding relief in such cases, may consider, and, so far as possible, redress her wrongs and protect her rights.

This clear and vigorous statement of the true law upon this subject would seem to conclusively demonstrate the correctness of the Court's position that statutes relating to the property rights of married women, and to their rights to sue separately for torts committed against them by third persons, do not include the right of a wife to sue her husband for such a tort as was committed here, however grievous and humiliating to her, and however atrocious was the act of her husband. Hard cases are said to be the quicksands of the law. It is not because of any consideration for such men as he is that the law is as we have stated it to be, but to prevent the great and lasting evil to the community at large by establishing a principle most harmful to it. It is a decision in favor of every man and woman who has an interest in the welfare of the public, which should be protected and safeguarded, lest greater evil be the result. It is but another application of the acknowledged maxim of the law that private convenience, or advantage, must yield to the public good. As *Justice Day* so well said, the wife is not without remedy to vindicate the right and to punish, according to his deserts, this human miscreant who has so vilely and profanely broken the sacred vows, which he made at the marriage altar, by his infamous conduct, and the cruel and heartless treatment of his wife, polluting and debauching her by his foul and contaminating touch, and filling her blood with the poison of a most loathsome disease. Nothing could be so horrible and repulsive, and he will deserve all the punishment he may receive for this grave and enormous wrong to her. But we must not be led away from correct thinking and impartial judgment by any such consideration as the enormity of the evil done by him. His conduct, however aggravated, does not change the law. It stands just as it was before. The State may indict him for this foul assault upon his wife's person, but his wife cannot sue him because of the personal unity that subsists between them.

The unity of person, as to husband and wife, has not been completely severed by our law, as to contracts or torts, as will appear from Consol. Statutes of 1919, secs. 2515, 2518, the first of those sections forbidding certain contracts between husband and wife, unless executed in the prescribed way, and the second of the sections providing that the husband shall be jointly liable with the wife for her torts, and for costs and fines, and he is jointly liable with her for certain crimes or offenses committed solely by her, he, on account of their relation or oneness to each other, presumably being present and participating in the offense, and supposed to exercise a kind of control over her. It may be added that by section 2516, contracts between them which are "inconsistent with public policy are void." Section 2513, as to her earnings and "damages for personal injuries, and other torts sustained by her," manifestly refer to contracts with and torts of other persons than her husband, as the language of the section most clearly demonstrates. There are one or two other sections which more or less tend the same way. The writer of this opinion went as far as was possible under the law, even to its extreme limit, in order to sustain and protect the wife's right to the full enjoyment of her separate property and to facilitate her unrestricted use and enjoyment thereof (in *Vann v. Edwards,* 135 N. C., 661), and he would do the same here in order to compensate her, if such a thing can be done, for this outrageous violation of her person, but the law stops him in the pursuit of a remedy that will avail her, as this is a question of substantive law, and not of procedure, and that has not been altered, as has the other, so that she can recover, and we cannot go beyond what has been provided for her. We must keep within the law, however much we may desire to award her an adequate sum for this grievous and vicious wrong. The law is our only rule of action in the premises.

The case of *Banfield v. Banfield,* 40 L. R. A. (Mich.), 757, is like this in its facts, except that there the husband communicated to his wife a still more loathsome disease. But that able and learned Court denied her right to sue, and held that "personal wrongs inflicted upon her give her no right to a decree of separation or divorce from her husband, and our statutes have given the courts of chancery exclusive jurisdiction over that subject. This Court, clothed with the broad powers of equity, can do justice to her for the wrongs of her husband, so far as the courts can do justice, and, in providing for her, will give her such amount of her husband's property as the circumstances of both will justify, and in so doing may take into account the cruel and outrageous conduct inflicted upon her by him, and its effect upon her health and ability to labor. 2 Am. & Eng. Enc. Law (2 ed.), p. 120; 2 How. Anno. Stat., p. 6245. In the absence of an express statute, there is no right to maintain an action at law for such wrong. We are cited to no authority holding the

contrary. We cite a few sustaining the rule: *Abbott v. Abbott,* 67 Me., 304; *Freethy v. Freethy,* 42 Barb., 641; *Peters v. Peters,* 42 Iowa, 182; *Schultz v. Schultz,* 89 N. Y., 644; Cooley Torts (2 ed.), p. 268; Schouler, Dom. Rel., p. 252; Newell, Defamation, p. 366; Townsend, Slander and Libel (3 ed.), p. 548."

The cases we have cited are also to the effect that even after the marital tie is severed, the wife cannot sue the husband for a wrong committed before the divorce. *Libby v. Berry,* 74 Me., 286 (*S. c.,* 43 Am. Rep., 589). And the rule works both ways, as the husband cannot sue the wife for a tort committed upon him, as by an assault with a gun. *Peters v. Peters,* 103 Pac. (Calif.), 219 (*S. c.,* 23 L. R. A. (N. S.),), 699.

The *Fulton case,* 145 N. C., 489, has no bearing upon this question. There the State prosecuted, and not the wife. The question of the marital unity was not at issue, and there was no determination based upon it. The writer of this opinion concurred in the principle there decided, that the husband was indictable for the slander of his wife, but, as we have said, that is not the question here, as the right of the State to indict, and of the wife to sue, are two very different things. The State can indict any person for a violation of her laws, and the wife can sue, in any case, except where denied the right to do so, as she is in this instance.

If the unity of man and wife has been abolished, why have we still remaining as one of the relics of the ancient common law the estate by the entirety which is solely based, as we have often said, upon this very doctrine of unity. In that instance the twain is still but one.

We are ready to denounce the brutal conduct of this man towards his virtuous wife, as severely as judicial propriety will permit, but we cannot go beyond the law in giving a right which it denies to her, though we would willingly do so if it were proper that we should.

We are of the opinion that this action should be dismissed, as it has not the sanction of the law.