# McKINNEY v. McKINNEY

(No. 2217; April 5, 1943; 135 Pac. (2d) 940)

For the plaintiff in error, there was a brief by *E. E. Enterline* and *Madge Enterline,* of Casper, Wyoming, and oral argument by *E. E. Enterline.*

206

For the defendant in error there was a brief by *William B. Cobb* and *S. J. Lewis,* of Casper, Wyoming, and oral argument by *S. J. Lewis*.

RINER, Justice.

This case is hereby proceedings in error to review a judgment of the District Court of Natrona County in an action wherein Constance S. McKinney was plaintiff and Thomas M. McKinney was defendant. The party last mentioned was the husband of the plaintiff and still is. The parties will be subsequently mentioned

as aligned in the District Court or by their marital relationship of husband and wife.

Summarized plaintiff's petition, after setting out certain preliminary allegations relative to the defendant's due compliance as owner of an automobile with the legal requirements necessary to obtain a registration number for this vehicle in Big Horn County, alleges that on September 4, 1938, about 5:30 in the morning, the defendant drove his car in a westerly direction upon United States Highway No. 20 to a "point about one mile east of Shoshoni, Wyoming. That at that time, and for some time prior thereto, there was and had been a pouring rain and that said Highway was in a slippery and dangerous condition, which facts were then known by the said defendant.

"That riding in said automobile with the said defendant upon invitation of the defendant and as his invited guest was the plaintiff, who then was, ever since has been and now is the wife of defendant.

"That the said defendant, at the time and place aforesaid, operated said automobile in a grossly negligent manner in this:

"That said defendant drove said automobile along and upon said Highway around a curve during such pouring rain and while said Highway was in such slippery and dangerous condition as aforesaid at a high and dangerous rate of speed, to-wit: about seventy-five miles per hour. That by reason of said gross negligence of the said defendant the said automobile went out of control, left the right hand side of said Highway, tumbled head-on and then sidewise, rolling over some six or eight times, coming to a stop with the right side of said car resting against the ground and the left side thereof in the air," whereby plaintiff was severely injured.

Recovery is sought for indebtedness incurred by the

plaintiff for medicines, nursing, medical care and attention and hospital expenses since the accident and for similar indebtedness that will be incurred in the future.

At the time of the accident the plaintiff was thirty-nine years old.

It will not be necessary to particularize the remaining portion of the pleading in order to understand the action taken by the trial court and the question submitted here for determination.

To this pleading the defendant interposed a demurrer to the effect that it did "not contain sufficient facts to state a cause of action in favor of plaintiff and against defendant." The issue of law thus raised was duly argued, decided by the District Court in favor of the defendant, and the plaintiff declining to plead further a judgment of dismissal of her action was directed against her. She as plaintiff in error has brought this judgment here for review as above set forth.

The point argued and submitted for decision is whether in this State a wife as an invited guest may sue her husband for his alleged gross negligence in driving an automobile under circumstances as detailed in the pleading so that as a consequence she suffered serious personal injuries. As may be surmised from what has hereinbefore been set forth the District Court ruled that she could not maintain the action.

There is no statute in this State according a wife such a right of action unless it may be found in the so-called Married Women's Act, W. R. S. 1931, Chapter 69. Sections 69-101, 69-103 and 69-105 would appear to be the pertinent provisions thereof. These sections read thus:

Section 69-101. "All the property, both real and personal, belonging to any married woman as her sole and separate property, or which any woman hereafter mar-

ried owns at the time of her marriage, or which any married woman during coverture acquires in good faith from any person whomsoever, or by descent or otherwise, together with all rents, issues, increase and profits thereof, shall, notwithstanding her marriage, be and remain during coverture her sole and separate property under her sole control and be held, owned, possessed and enjoyed by her the same as though she were sole and unmarried, and shall not be subject to the disposal, control or interference of her husband, and shall be exempt from execution or attachment for the debts of her husband; provided, that the same shall not have been conveyed to her by her husband in fraud of his creditors; and that the necessary expenses of the family and the education of the children are chargeable upon the property of both husband and wife, or either of them, and in relation thereto they may be sued jointly or separately, provided, further, that the personal expenses of the husband be not chargeable to the wife's separate estate."

Section 69-103. "Any woman may, while married, sue and be sued in all matters having relation to her property, person or reputation, in the same manner as if she were sole."

Section 69-105. "Any married woman may carry on any trade or business and perform any labor or services on her sole and separate account and the earnings of any married woman from her trade, business, labor or services, shall be her sole and separate property and may be used and entrusted by her in her own name, and she may sue and be sued as if sole in regard to her trade, business, labor, services and earnings, and her property acquired by trade, business and services and the proceeds thereof, may be taken on any execution against her, except where the same shall be exempt under the exemption laws of the state."

They came into the body of our law through territorial enactment in the year 1869 and have been carried forward in subsequent revisions and compilations of the laws of the Territory of Wyoming and of this State. It may be noted in this connection that the two proviso clauses in Section 69-101, supra, were added by the

State Legislatures of 1915 and 1917. (See Laws of Wyoming, 1915, Chapter 15, whose title was: "An Act to amend and re-enact Section 3908 of the Compiled Statutes of Wyoming, 1910, relating to the separate estate of married women." and Laws of Wyoming, 1917, Chapter 5, the title thereof reading: "An Act to amend and re-enact Section 3908 of Wyoming Compiled Statutes, 1910, as amended and re-enacted by Chapter 15, of Session Laws of Wyoming, 1915, relating to the separate estate of married women and joint and several liability of both husband and wife for family expenses.") Otherwise the language is practically identical with that contained in the original territorial enactment which appears as Chapter 19 of Laws of Wyoming, 1869, said Act being approved December 4th of that year. The title of this original Act was simply: "An Act to protect married women in their separate property and the enjoyment of the fruits of their labor."

Another territorial Act which has likewise been carried forward into the law of this State was approved December 2, 1869. So far as pertinent here it declares that:

"The common law of England as modified by judicial decisions, so far as the same is of a general nature and not inapplicable, * * * * shall be the rule of decision in this state when not inconsistent with the laws thereof, and shall be considered as of full force, *until repealed by legislative authority.*" (Italics supplied.)
(Sec. 26-101, W. R. S. 1931.)

In connection with the statute last mentioned it is hardly necessary to bring to mind certain unquestioned rules of the common law, viz., as stated in 27 Am. Jr. 191, Section 589: "At common law, a tort committed by one spouse against the person or character of the other does not give rise to a cause of action in favor of the injured spouse." See also 30 C. J. 714, Section 317,

and cited cases. And as also set forth in the text first above mentioned at page 202, Section 602, "At common law a married woman cannot sue or be sued alone, without joining her husband."

Just here it may also be recalled that it is well settled that in construing statutes the rules of the common law are not to be changed by doubtful implication nor overturned except by clear and unambiguous language. As pointed out by 25 R. C. L. 1054, Section 280, on the authority of many decisions:

"It is not to be presumed that the legislature intended to abrogate or modify a rule of the common law by the enactment of a statute upon the same subject; it is rather to be presumed that no change in the common law was intended, unless the language employed clearly indicates such an intention. * * * * The rules of the common law are not to be changed by doubtful implication, nor overturned except by clear and unambiguous language."

We also have still another statute which operates upon circumstances such as appear in plaintiff's pleading hereinabove set forth. That statute is the so-called guest law of this State, which deals with the liability of an owner of an automobile to an invited guest on account of the owner's gross negligence or wilful and wanton misconduct. That statute reads:

"No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been caused by the gross negligence or wilful and wanton misconduct of the owner or operator of such motor vehicle and unless such gross negligence or wilful and wanton misconduct contributed to the injury, death or loss for which the action is brought."
(Section 72-701 W. R. S. 1931.)

It is apparent from the law last above quoted that

for conduct falling short of gross negligence or wilful and wanton misconduct on the part of the husband towards his wife who is riding as an invited guest in his motor car there could be no recovery. This statute it would seem is a definite legislative destruction of the right of the wife—assuming she had that right before the statute was passed—to sue the husband for ordinary negligence in driving his car, whereby she is injured in consequence of being an invited guest therein. See Roberson v. Roberson, 193 Ark. 669, 101 S. W. (2d) 961; Scotvold v. Scotvold (S. D.) 298 N. W. 266.

That gross negligence on the part of the defendant herein is alleged in the pleading attacked by demurrer as aforesaid can hardly be doubted, and this fact appears to have been assumed by the parties hereto as well as by the District Court. There remains then the point submitted above as to the right of a wife to sue her husband under those sections of the Married Women's Act already quoted and under the circumstances as detailed in plaintiff's pleading.

It is unnecessary to cite many of the decisions of this court declaring that the intent of the Legislature is the controlling factor in construing the laws it enacts. In International Harvester Company v. Jackson Lumber Company, 25 Wyo. 367, 170 P. 6, it was said relative to the duty resting upon the Supreme Court of this State that "it is incumbent on this court to construe the statutes and laws of the state according to what it is convinced is the true intent of the lawmakers." Similarly in In re Lambert, 53 Wyo. 241, 80 P. (2d) 425, we stated:

"The intention of the lawmaking body to be gathered from the terms of the statute in the light of the objects and purposes intended to be accomplished is always the controlling factor in the construction of legislative acts."

Inquiry accordingly should be made as to whether it

was the true intent of the Territorial Legislature of Wyoming when it adopted the Sections of Chapter 19, Laws of 1869, as quoted above, to provide that the wife might sue her husband for his negligence in managing a conveyance in which they both were riding? It is well known, of course, that the automobile did not come into general use until some time after the year 1910, but it is hardly to be believed that in the "horse and buggy" days in Wyoming Territory and the early days of statehood the husband was never guilty of negligence in driving a team of horses attached to a buggy or wagon, whereby the wife was injured as she rode with him. Shall no significance be attached to the fact that for a lapse of more than seventy years after its enactment this is the first case of negligent injury inflicted upon a wife by her husband through which she seeks damages from him to be brought to the Supreme Court of Wyoming Territory or the Supreme Court of this State? If it had been thought that the Married Women's Act of this jurisdiction accorded such a right of recovery it would seem that cases would assuredly have been brought forward under it into the trial courts and ultimately reached the court of last resort.

In Wait v. Pierce, 191 Wis. 202, 209 N. W. 475, where the Supreme Court of Wisconsin adopted what will subsequently be shown to be the minority rule by a four to three division of the court, Chapter 99 of the Laws of Wisconsin of 1881 provided:

"And any married woman may bring and maintain an action in her own name for any injury to her person or character the same as if she were sole, and any judgment recorded in such action shall be the separate property and estate of such married woman, provided that nothing herein contained shall affect the right of the husband to maintain a separate action for any such injuries as now provided by law."

Chapter 529, Laws of 1921, further provided:

"Women shall have the same rights and privileges under the law as men in the exercise of suffrage, freedom of contract, choice of residence for voting purposes, jury service, holding office, holding and conveying property, care and custody of children, and *in all other respects*. The various courts, executive and administrative officers shall construe the statutes where the masculine gender is used to include the feminine gender unless such construction will deny to females the special protection and privileges which they now enjoy for the general welfare. The courts, executive and administrative officers shall make all necessary rules and provisions to carry out the intent and purposes of this statute." (Italics supplied.)

Concerning these Sections the strong dissenting opinion of Mr. Justice Eschweiler pointed out:

"It is not and cannot be contended that there is express language so abolishing the common law, either in the amendment by chapter 99 of 1881 which, after 45 years of innocuous desuetude in that regard is now declared to have such potent, though so long latent, effect in overturning that which has been all these years an unquestioned doctrine by bench and bar, or by chapter 529 of 1921. The conclusion reached by the majority must therefore be based solely upon construction. A construction moreover which in creating new rights for the wife also necessarily creates new rights for husband and minor child."

As we shall presently see, a number of appellate courts in the several States of the Union and the Supreme Court of the United States have declared that it was not the intent of the Married Women's Acts to create any new rights unknown to the common law, but only to remove the common law requirements that the wife must be joined with her husband in all actions for or against her and to enable her to sue alone, where formerly both could sue, or he alone, for wrongs against her. At this point it may be observed that the decisions

of the appellate courts of the nation, viewed as an entirety in construing the Married Women's Acts of the several States of the Union, are in hopeless conflict in the results they have reached as to the effect of those Acts, even when the statutory language before them has been identical or substantially so. It would be useless to endeavor to reconcile them. It cannot be done.

Up to the year 1910, the year of the decision in the case of Thompson v. Thompson, 218 U. S. 611, 31 Sup. Ct. Rep. 111, 54 L. Ed. 1180, it is significant that not a single jurisdiction in this country, so far as our attention has been directed to the matter, had permitted either husband or wife to maintain an action for a personal tort against the other. The views expressed in the dissenting opinion in that case would seem to have supplied the first inducement to a number of state courts to reach conclusions opposed to the rule adopted by the majority of the court in the Thompson case. These dissenting courts have not always scrutinized carefully the exact terms of the laws under consideration at their hands. This line of dissenting cases even appears not to have commenced until the year 1914, when Connecticut and Oklahoma saw fit to break away from the rule announced by the highest Federal court of the nation. Brown v. Brown, 88 Conn. 42, 89 A. 889; Fiedeer v. Fiedeer, 42 Okla. 124, 140 P. 1022. But the majority of the courts of the Union still follow the rule promulgated in the Thompson case, supra. Willott v. Willott, 333 Mo. 896, 62 S. W. (2d) 1084, 89 A. L. R. 114: 89 A. L. R. 118 note; 27 Georgetown Law Journal (April and May issues of 1939) 696, 893 at 922; 25 Marquette Law Review (February, 1941) 89 at 91.

In the Thompson case, supra, the plaintiff sued her husband for assault and battery, grounding her right to the action upon Section 1155 of the Code of the District of Columbia, where the parties were domiciled. That Section provided that "married women shall have

the power to * * * * sue separately for the * * * * protection of their property and for *torts committed against them as fully and freely as if they were unmarried * * *"* (Italics supplied.) The action was dismissed on demurrer. The Court of Appeals of the District affirmed that judgment. 31 App. D. C. 557. On writ of error the Supreme Court of the United States affirmed that ruling. Justice Harlan wrote a dissenting opinion, which was concurred in by Justices Holmes and Hughes.

It will be observed that the language of the statute in that case is far more explicit and sweeping than the phraseology of the Wyoming law. Yet Mr. Justice Day, who wrote the majority opinion, said after quoting the District of Columbia law, in the course of his opinion:

"That is, the limitation upon her right of action imposed in the requirement of the common law that the husband should join her was removed by the statute, and she was permitted to recover separately for such torts, as freely as if she were still unmarried. The statute was not intended to give a right of action as against the husband, but to allow the wife, in her own name, to maintain actions of tort which, at common law, must be brought in the joint names of herself and husband.

"This construction we think is obvious from a reading of the statute in the light of the purpose sought to be accomplished. It gives a reasonable effect to the terms used, and accomplishes, as we believe, the legislative intent, which is the primary object of all construction of statutes."

To the suggestion that the wife might be severely injured by a brutal husband and for that injury he should be required to compensate her, it was responded:

"Apart from the consideration that the perpetration of such atrocious wrongs affords adequate grounds for relief under the statutes of divorce and alimony, this

construction would, at the same time, open the doors of the courts to accusations of all sorts of one spouse against the other, and bring into public notice complaints for assult, slander, and libel, and alleged injuries to property of the one or the other, by husband against wife, or wife against husband. Whether the exercise of such jurisdiction would be promotive of the public welfare and domestic harmony is at least a debatable question. The possible evils of such legislation might well make the lawmaking power hesitate to enact it. But these and kindred considerations are addressed to the legislative, not the judicial, branch of the government. In cases like the present, interpretation of the law is the only function of the courts."

The court further said:

"It must be presumed that the legislators who enacted this statute were familiar with the long-established policy of the common law, and were not unmindful of the radical changes in the policy of centuries which such legislation as is here suggested would bring about. Conceding it to be within the power of the legislature to make this alteration in the law, if it saw fit to do so, nevertheless such radical and far-reaching changes should only be wrought by language so clear and plain as to be unmistakable evidence of the legislative intention. Had it been the legislative purpose not only to permit the wife to bring suits free from her husband's participation and control, but to bring actions against him also for injuries to person or property as though they were strangers, thus emphasizing and publishing differences which otherwise might not be serious, it would have been easy to have expressed that intent in terms of irresistible clearness."

In connection with the dissenting opinion of Justice Harlan in the Thompson case it is especially worthy of note that the Supreme Court of Washington in Schultz v. Christopher, 65 Wash. 496, 118 P. 629, has very well said concerning the particular statute involved in the Thompson case:

"So that it will be seen that it especially provided that married women might sue for torts committed

against them as fully and freely as if they were unmarried, and this was the special provision of the statute upon which the dissenting opinion of Judge Harlan, largely quoted by appellant in favor of her view of the law, was based. An examination of the dissenting opinion leads us to conclude with certainty that, had it not been for this special provision, the learned judge would not have felt called upon to dissent from the majority opinion."

It should not be overlooked as devoid of significance that though more than three decades have elapsed since the decision in the Thompson case the national Congress, so far as has been drawn to our attention, has not seen fit to alter the law of the District of Columbia contrary to the ruling in that case established.

It would seem that the court's reasoning in the first excerpt quoted above should be particularly applicable to the provisions of Section 69-103, supra, especially relied upon by plaintiff in error here, viz., that a married woman may "sue and be sued in all matters having relation to her property, person or reputation, *in the same manner as if she were sole."* (Italics supplied.)

Webster's New International Dictionary defines "manner" as "a way of acting; a mode of procedure; a mode or method in which something is done or in which anything happens; way; mode." So Seale v. Balsdon et al., 51 Cal. App. 677, 197 P. 971, says:

"The amendment last referred to also specifies that the assessments shall be collected in the manner provided by law at the time such assessments were made. As here used, the word 'manner' has a definite meaning. It refers to the method of procedure. The manner of doing a thing has reference to the way of doing it—to the method of procedure. See Bankers' Life Insurance Company v. Robbins, 59 Neb. 169, 80 N. W. 484-486; 26 Cyc. 516."

Under these definitions it would seem that the lawmaking body in adopting the section now under consid-

eration was simply conferring upon a married woman the right to sue and be sued by third persons as if alone and without joining her husband, as was required at common law, as we have seen. She was to act in the same "way" or "mode of procedure" as if unmarried. It would appear to be disregarding the "plain or ordinary and usual sense of the words "same manner"—as Section 112-101 W. R. S., 1931, declares they shall be construed—"unless plainly repugnant to the intent of the legislature," to say that by those words the legislators intended to confer upon her a distinct right of action against her husband—something the common law did not give her. The legislature, if it had intended to confer that right, would undoubtedly have plainly said so. That has recently been done in the State of New York for example. See 7 Appleman on Insurance Law and Practice, P. 224, Sec. 4410 and citations.

Recurring again to the State statutes using the words "in the same manner" with reference to a wife's right to sue and the decisions under them, it may not be amiss to refer to the following authorities:

In Harvey v. Harvey, 239 Mich. 142, 214 N. W. 305, the statute (Sec. 12357, C. L. 1915) read: "Whenever a cause of action shall accrue to, or arise against, any married woman, she may sue or be sued in the same manner as if she were sole." And the court held in a suit thereunder by a wife against her husband for injuries received by her while riding in an automobile driven by her husband that her action must fail. The second sentence of the opinion reads:

"In the circuit judgment passed for defendant on the ground that a wife cannot maintain an action against her husband to recover damages for an injury occasioned by his negligence."

Its concluding sentence is:

"The circuit judge followed the rule in this state, and supported elsewhere by the great weight of authority."

In Keister's Adm'r v. Keister's Ex'rs, 123 Va. 157, 96 S. E. 315, the Virginia law (Sec. 2286a Pollard's Code of Virginia 1904, Acts 1899-1900, p. 1240) provided: "* * * A married woman may contract and be contracted with, sue * * * in the same manner and with the same consequences as if she were unmarried, whether the right or liability asserted by * * * her, shall have accrued before or after the passage of this act. * * *" And it was held that this statute did not confer upon a married woman a right of action against her husband for a personal tort, the court saying:

"The statute under consideration merely provides that at all times during the coverture a married woman is thereby given a right to sue, provided she had, at the time it is alleged that the cause of action arose, the substantive civil right which was necessary, as aforesaid, to give rise to such cause of action. The statute therefore is entirely consistent with the common law, which does not confer the substantive right aforesaid on married women, and hence does not change the common law in that regard by implication. That is to say, the portion of the statute under consideration has reference only to the remedies thereby given to married women, and does not confer the substantive right necessary to support the right of a married woman to sue her husband for an assault upon her committed by him during the coverture.

"Such is the conclusion to which we are led by a consideration of the statute on principle and under what are universally considered and admitted to be proper rules of construction of such a statute. We are confirmed in that conclusion by our examination of the authorities on the subject."

This language of the Virginia court received approval at the hands of the Supreme Court of Michigan in the Harvey case, supra.

In Conley v. Conley, 92 Mont. 425, 15 P. (2d) 922, the law (Sec. 5809, Rev. Codes of Montana) declared that "a married woman may sue and be sued in the same manner as if she were sole." In this case the wife

as plaintiff brought the action to recover damages from the defendant, her husband, for personal injuries alleged to have been caused by the negligence of the defendant husband's chauffeur while she was riding, at the defendant's invitation, as a passenger in defendant's automobile. A demurrer to the plaintiff's complaint was sustained. Plaintiff declined to amend and judgment was passed against her. The appellate court's disposition of the legal question thus raised is fairly indicated by the following excerpt:

"Clearly, the object of the Married Women's Act of Montana was to relieve the wife of common-law disabilities; among others, to place the wife on an equality with her husband with respect to property matters, the right to contract, and to sue and be sued. We see nothing in any of the foregoing statutes to indicate a purpose to create a right which neither husband nor wife had at common law.

"These sections do not attempt to confer greater rights of action upon a married woman than are possessed by her husband. Peters v. Peters, 156 Cal. 32, 103 P. 219, 23 L. R. A. (N. S.) 699; Rogers v. Rogers, 265 Mo. 200, 177 S. W. 382; Heyman v. Heyman, 19 Ga. App. 634, 92 S. E. 25. 'By legislation common-law disabilities of the wife have been largely lifted, but lifting a disability does not operate to grant a right of action theretofore nonexistent between husband and wife. * * * Surely the Legislature, in conferring equality of right to sue did not confer a right of action never possessed by husband or wife at common law.' (Harvey v. Harvey, 239 Mich. 142, 214 N. W. 305, 306.)"

The law of Nebraska provided: (Section 8529, Compiled Statutes, 1922) "A woman may while married sue and be sued, in the same manner as if she were unmarried." In Emerson v. Western Seed & Irrigation Co., 116 Neb. 180, 216 N. W. 297, a demurrer was sustained to the plaintiff wife's petition, which charged that she was injured "through the negligent driving by her husband of an automobile." On rehearing of an

affirmance of an appeal from dismissal the court adhered to its original view of the case, and this was said:

"An examination of the decisions of other jurisdictions discloses a great weight of opinion opposed to opening a field of litigation between spouses in tort actions by means of judicial interpretation and without unmistakable legislative action. The procedural difficulties, the dangers of disrupting the secrecy and serenity of marital relations, the avenue for fraud, the startling innovation in permitting such controversies, and the lack of clear legislative indorsement have all been assigned as ample reasons for the refusal of the courts to sanction, by supplying statutory interpretation, a new form of litigation manifestly requiring unequivocal legislation for its existence. An illustration of this reluctance is found in Thompson v. Thompson, 218 U. S. 611, 31 S. Ct. 111, 54 L. Ed. 1180, 30 L. R. A. (N. S.) 1153, 21 Ann. Cas. 921, where the statutes under consideration come close to an authorization. * * * *

"The legislation of this state apparently was designed to remove disabilities from married women, so as to place the sexes in equal position before the law. This was fully attained. The husband may not sue the wife for tort. Both spouses have the same disability and the equality is complete. If this situation is to be disturbed, the change should come by legislation."

In New Jersey the law read, (3 N. J. Comp. St. 1910, p. 3236, § 12a) :

"Any married woman may maintain an action in her own name without joining her husband therein for all torts committed against her, or her separate property, in the same manner as she lawfully might if a feme sole. * * *"

(3 N. J. Comp. St. 1910, p. 3237, § 12b) :

"Any action brought in accordance with the provisions of this act may be prosecuted by such married woman separately in her own name, and the nonjoinder of her husband shall not be pleaded in any such action."

Concerning this statutory language the New Jersey Court of Errors and Appeals said in Sims v. Sims, 79 N. J. L. 577, 582, 76 A. 1063:

"That this act was intended to confer the power upon a married woman to protect and enforce her rights, is the specific announcement contained in its title. The body of this act declares that she may maintain an action as a feme sole might lawfully do, and without joining her husband therein for all torts committed against her or her property. Keeping in mind the old law and the existing mischief, it becomes manifest that the legislative intent which inspired this remedial measure could have been only a desire to confer upon the married woman that equality of remedy as an independent suitor, which would enable her to vindicate her right in personam for a tort committed against her, and thus remedy the inequality to which she was subjected by the common law."

See also Howard v. Howard, 200 N. C. 574, 158 S. E. 101, where the North Carolina court, one of those jurisdictions where the minority rule is applied, construed the New Jersey law and held thereunder that no action could be brought by the wife against her husband for his negligence in driving his automobile in the State of New Jersey, where the accident happened.

See additionally Hudson v. Gas Consumers' Association, 123 N. J. L. 252, 8 A. (2d) 337, where it was said:

"It is of course a settled matter that a wife may not have a suit for damages against her husband for his tort. This is the common law rule and no statute has been enacted in this state that disturbs it."

The case of Rains v. Rains, 97 Colo. 19, 46 P. (2d) 740, is the only case to which our attention has been called which has a statutory provision similar to our Section 69-103 W. R. S. 1931, and which has adopted the rule that the wife may sue her husband for his negligence.

The author of an extended article in the Georgetown Law Journal, supra, after an exhaustive survey of the point we are considering as reflected in the decisions of the appellate courts of the nation, states that "actions for negligence between husband and wife have been denied in this country in the following twenty-one jurisdictions: "District of Columbia, Florida, Georgia, Indiana, Iowa, Louisiana, Maine, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, Tennessee and Vermont"; that "tort actions between spouses have been foreclosed in the following nine jurisdictions" and "California, Delaware, Illinois, Kentucky, Massachusetts, Texas, Virginia, Washington and West Virginia are so listed. This foreclosure has been accomplished either by the denial of previous suits for willful torts or by statutes. Massachusetts has foreclosed the matter by a statute expressly forbidding the wife to sue her husband. The author points out also that West Virginia has allowed recovery for negligence between husband and wife where indemnity liability insurance exists, the authority for this statement being found in the decision of the West Virginia court in Lusk v. Lusk, 113 W. Va. 17, 166 S. E. 538, which was an action between parent and child. And this West Virginia rule would appear to have the sanction of the author, he apparently disapproving the rule which would allow the wife to sue the husband for torts generally. But in 7 Appleman Insurance Law and Practice 223, § 4410, the author of that text propounds the query in criticism of that relaxation of the majority rule, after pointing out in the note to the text that New Hampshire has reached the same result under an employer's liability policy (Dunlap v. Dunlap, 150 A. 905, 84 N. H. 352), where, as in the Lusk case, the action was between parent and child:

"Is it possible that such courts can overlook the detri-

ment to public morals by encouraging collusion in such instances?"

That the text last mentioned had reference to a real danger is evidenced by the language of the United States Circuit Court of Appeals for the Fourth Circuit in State Farm Mutual Automobile Insurance Company v. James, 80 F. (2d) 802, where an exception in an insurance liability policy as to a person in the same household as the assured was being considered. The court remarked:

"Obviously the exception was intended to restrict the company's liability, and the specific purpose was to safeguard the company against the natural and inevitable partiality of the assured to an injured person if he should happen to be a member of the same family circle."

Similarly in a New Hampshire case later than the Dunlap case, viz., Cartier v. Cartier, 84 N. H. 526, 153 A. 6, it was said:

"The natural tendency of one insured to strengthen or enlarge the evidence of liability to members of his household for accidents insured against increases the hazard of liability under the policy in such cases over that for accidents to others. Without actual dishonesty, the disposition to favor those close to one reflects itself in opinions and judgments, and one insured is more likely to concede by admission or nonresistance blame for hurting a member of his household than for doing harms to others."

Commenting on the same matter the note in 31 Illinois Law Review 782-793 remarks:

"The modern personal injury suit between spouses is usually directed at an insurance company, in fact, and presents a real danger of collusion. This possibility seems the best basis for refusing such suits. * * * *"

Referring again to the article in the Georgetown Law Journal, aforesaid, it is noted that, as stated

therein, only ten jurisdictions allow tort actions between spouses, those so listed being "Alabama, Arkansas, Colorado, Connecticut, New Hampshire, North Carolina, North Dakota, Oklahoma, South Carolina and Wisconsin."

To this list should be added the subsequently decided case of Scotvold v. Scotvold (S.D.) 298 N. W. 266. A recovery against the husband by the wife for personal injuries caused by his alleged negligence in driving an automobile was, nevertheless, denied under the guest statute law of that state akin to our § 72-701, supra. It may fairly be pointed out, as well, that the law relied upon by the wife as according her the right to sue her husband was far more specific and enlarged in its phraseology than the Wyoming law quoted above. The South Dakota statute thus urged by the wife in that case read:

"The wife shall have and retain after marriage all the civil and property rights of a single woman. She may buy and sell, receive and convey or otherwise dispose of any real or personal property belonging to her or in which she may have an interest, without joining the name of her husband except as otherwise provided in case of the homestead and for any injury to her reputation, person or property, she may sue in her own name without joining her husband as party plaintiff and in like manner actions founded upon her separate contracts or torts or relating to her individual property may be brought against her without joining the husband as party defendant. * * * *"

Reference has hereinbefore been made to the Wisconsin law in the quotations above given and its dissimilarity with our Married Women's Act is also quite evident.

Concerning the North Dakota and Oklahoma cases which adhere to the minority view (Fitzmaurice v. Fitzmaurice, 62 N. D. 191, 242 N. W. 526; Fiedeer v. Fiedeer, 42 Okla. 124, 140 P. 1022; Courtney v. Court-

ney, 184 Okla. 395, 87 P. (2d) 660) they also were rendered under statutes radically different from the Wyoming law now under consideration and far broader in their scope. In the Fitzmaurice case the court says of the statute there construed, "We have been unable to discover any other statute identical with our own," and the court quoted the statute under consideration in that case as follows: (C. L. N. D. 1913, Section 4411)

"Either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which the other might, if unmarried. The wife after marriage has with respect to property, contracts and torts the same capacity and rights and is subject to the same liabilities as before marriage, and in all actions by or against her she shall sue and be sued in her own name."

The statute before the Oklahoma courts read:

"Woman shall retain the same legal existence and legal personality after marriage as before marriage, and shall receive the same protection of all her rights as a woman, which her husband does as a man; and for any injuries sustained to her reputation, person, property, character, or any natural right, she shall have the same right to appeal in her own name alone to the courts of law or equity for redress and protection that her husband has to appeal in his own name alone. * * *"
(Sec. 3363, Rev. Laws 1910.)

The opinion in the case of Courtney v. Courtney, supra, remarks that that court in Moore et al. v. Moore, 59 Okla. 83, 158 P. 578, with especial reference to this law, declared "in effect that it means exactly what it says; that it provides that married women shall have the same rights that their husbands have as 'men'— not as husbands." Nevertheless the Courtney case was decided by a division of the court of five to four judges.

From what has been presented hereinbefore it is not to be overlooked that the great state courts of this nation, as well as the Supreme Court of the United States,

have denied the wife the right to sue her husband for a personal tort unless that right has been specifically conferred by a definite statutory enactment to that effect. It is believed that the weight of authority is in accord with this view. That fact it would seem is a very cogent reason for asserting that the Legislature and not the courts should indicate a contrary policy of the law if that is to be the rule. Had the attention of the Legislature which passed the Wyoming Territorial law of 1869 been directed to the problem now being considered, can it be reasonably concluded that it would have provided in specific language that the wife should be granted the right to sue her husband for a negligent tort? In view of the title of the Act aforesaid and the terms of the law, as reviewed above, it is not easy to think that such legislation would have been forthcoming. Of course, if a wife should be accorded the right to sue her husband for his negligence, whereby she is injured, then under the "be sued" as to her "person" provision of Section 69-103, W. R. S. 1931, supra, the husband would have to be held to have been accorded the same privilege, otherwise the unusual situation would be presented of the wife having a cause of action against her husband for negligence while the husband would have no such right against the wife. It would appear that the statutory language that she may "be sued" as to her "person" makes it additionally plain that the Legislature had in mind in using the language it did only her relations with third persons. Suppose a wife so carelessly prepares a meal that her husband is made ill, shall he have a right of action against her for negligence in so doing? To ask such a question is to answer it in the negative. It may be said that such a case may never arise and that this suggestion is over-drawn. Possibly, but to one who has listened to the testimony in many divorce suits, the suggestion does not seem to be so. Why open the courts to ordinary ac-

tions for negligence between the spouses when if the domestic tranquillity has been so thoroughly upset and the parties have lost all affection for each other, the divorce court is always available? Thompson v. Thompson, supra.

In the case of Finn v. Finn, 19 Ohio App. 302, it was held that where husband and wife lived together the wife could not maintain an action of tort against her husband to recover for injuries sustained by her through alleged negligence on his part in managing his automobile. Judgment was given for the defendant upon the pleadings. Affirming this judgment the Ohio Court in the course of its opinion said:

"The statutes of this state will be searched in vain for any provision expressly permitting the husband or wife to sue each other for injuries to the person or property of either. That the wife may sue in her own name and right upon any cause of action which she may have, whether it arise out of contract or out of injury to her person or property, is beyond dispute in this state. (Section 11245, General Code.) These enabling statutes, however, confer on her no new causes of action. They have only conferred upon the wife the same rights with reference to property, and the maintaining of actions in court, as were theretofore possessed by the husband. The right of the wife to maintain an action in her own name against third parties for wrongs sustained by her through the action of such third parties has been sustained by the Supreme Court in Westlake v. Westlake, 34 Ohio St. 621, and in Flandermeyer v. Cooper, 85 Ohio St. 327. That the enabling statutes above referred to were not intended by the Legislature to confer upon either husband or wife the right to maintain civil actions for tort against the other was the opinion of the Supreme Court expressed in the decision of State v. Phillips, 85 Ohio St. 317. * * * * * *

"It must be presumed that the legislators knew the policy of the common law, as established by centuries of judicial decisions. Had it been the intention of the legislature to permit husband and wife to sue each

other for injuries to the person or property caused by the other, it surely would have so declared by express and clear legislative enactment. To make such a radical change in the policy of the common law by judicial construction would be equivalent to such legislation. While the common-law unity of person in the husband and wife no longer prevails, nevertheless the marriage ceremony does constitute a new relationship whereby the parties assume a different responsibility toward each other and toward society. As husband and wife, there is at least a unity of interest in the establishment of a home. The home has been looked upon as constituting the basis of our civilization and the strength of our government. Love of home is regarded as the greatest safeguard of our institutions. The growing volume of divorce cases is cause for apprehension as to the future of our domestic stability. It would seem that any policy that may add to the causes for dissension between husband and wife would be of doubtful benefit. The intimate relations of home life might easily become the source of fruitful litigation. Shall a misplaced chair over which husband or wife falls furnish the grounds for an action against the other because of his or her alleged negligence? If such is to become the policy of the law, if such a radical change, so vitally affecting the legal status of husband and wife, is to be made, it should be made by clear and express legislation and not by judicial construction.

"We are aware of the fact that the courts of different states are not in accord upon this proposition, but the great weight of authority is opposed to the position taken by plaintiff in error in this case."

The Supreme Court of Ohio according to the statement contained in the case of Canen v. Kraft, 41 Ohio App. 120, 125, overruled a motion to have the record in the Finn case certified up to it.

It is evident from the foregoing authorities that the legislature of this state is the proper body to make such an important change of policy as is sought to be attained by this proceeding in error through strained judicial construction.

In this connection the Supreme Court of Minnesota

in the case of Drake v. Drake, 145 Minn. 388, 177 N. W. 624, 9 A. L. R. 1064, has employed language which should not be overlooked. That was a case where an injunction was sought by the husband against a wife to restrain the wife from committing "a series of personal torts involving neither a breach of contract nor specific property right" and "amounting to what is commonly known and understood as nagging." The court very forcefully said:

"We prefer the rule of the Strom Case (98 Minn. 427, 107 N. W. 1047, 6 L. R. A. (N. S.) 191, 116 Am. St. Rep. 387), and think it should be adhered to until such time as the Legislature shall deem it wise and prudent to open up a field for marring or disturbing the tranquillity of family relations, heretofore withheld as to actions of this kind, by dragging into court for judicial investigation at the suit of a peevish, fault-finding husband, or at the suit of the nagging, ill-tempered wife, matters of no serious moment, which if permitted to slumber in the home closet would silently be forgiven or forgotten. If that source of litigation is to be opened up at all, it should come about by legislation. Neither husband nor wife is without an appropriate remedy in such matters, where of a character to be redressed by the courts. The divorce courts are open to them, when the facts will justify relief of that character, and when the misconduct complained of is of a nature to constitute a crime the criminal laws will furnish adequate protection. But the welfare of the home, the abiding place of domestic love and affection, the maintenance of which in all its sacredness, undisturbed by a public exposure of trivial family disagreements, is so essential to society, demands and requires that no new grounds for its disturbance or disruption by judicial proceedings be ingrafted on the law by rule of court not sanctioned or made necessary by express legislation."

No useful purpose would be subserved by extending this opinion further though many additional reasons in support of the view maintained by it could be easily supplied. It follows from what has been said that the

learned District Judge who tried this case and gave judgment as stated above was correct in the result he reached, and the judgment should be affirmed.

BLUME, Justice.

This is an action brought by a wife against her husband to recover damages for gross negligence in operating an automobile in which she was his guest and by reason of which she was injured for life. A demurrer to the petition was sustained. The petition was dismissed and plaintiff appeals. The particular allegations of the petition are set forth in the opinion of Mr. Justice Riner, and it is not necessary to do so here. He holds that a wife cannot, any more than she could at common law, sue her husband. I concur in his opinion in so far as holding that a wife cannot sue her husband in the ordinary action of tort in the absence of a policy of liability or indemnity insurance taken out by the husband for his protection and that of those whom he injures. If actions of that nature would not be the cause but the result of the disturbance of family harmony, they would at least have a tendency to increase ill-feeling and to prevent possible reconciliation. Nor do I see much, if any, particular benefit to a wife in permitting her to sue in such cases. If the tort is such that it is a cause for divorce, the financial benefit to the wife as a redress for the wrong may be and ordinarily would be adjusted in an action for divorce or separate maintenance. If the tort is not such as to be a cause for divorce, I can, generally speaking, see no particular advantage to the wife to transfer a sum of money to her own pocket from the pocket of her husband, ignoring the fact that in such case the action itself would have a tendency to upset the peace and concord between them. To make my position clear, it is proper, if not necessary, to state my view of the limitation of the rule already stated. It cannot, or ought

not, apply when, as is probable in this case, and in many other cases which may arise, the husband is protected by liability insurance taken out for his protection and for the protection of those whom he may injure. In such case, the wife should be able to sue her husband, and she should not, in such case, be placed in a position inferior to that of strangers who are able to benefit by such insurance. It is stated in 30 Law Notes 105, in discussing suits between husband and wife that "every decision on either side has evoked a vigorous dissenting opinion." In view of this great diversity of judicial opinions on this subject, it is apparent, that unless we go back to fundamental principles, revise our premises and start afresh, we can come to no satisfactory conclusion herein. Experience has been the life of the law. Holmes, Common Law, 1. And unless present day realities are related to bygone traditions, the past ought not to dictate legal relations between parties. Rozell v. Rozell, 281 N. Y. 106, 22 N. E. (2d) 254, 123 A. L. R. 1015. We should not lose sight of the principle, as distinguished from a rule, stated in Rhinehart v. Rhinehart, 52 Wyo. 363, 380, 75 P. (2d) 390, to the following effect:

"While certainty of legal rules is important, law is not absolutely static. It grows and develops as necessity arises and seeks to adjust itself to the needs of society. 'Jurisprudence,' says Ulpian, 'is the knowledge of things human and divine, the science of the just and the unjust.' ' Dig. 1, 1, 10, 2. Constantly aiming, as the law does, at ideal justice, it cannot, in the absence of a positive legislative rule to the contrary, ignore changed conditions and proceed from premises which are no longer sound. The only doubt which can arise in any such case is as to whether or not, in view of the desirability of the certainty of legal rules, the change is sufficiently marked as to justify a departure from a former rule. If such conditions have clearly and markedly changed, the law must proceed from new premises consistent with the changes."

Once upon a time, at common law, a wife could not sue her husband. Husband and wife were considered a unity; the personal property of the wife became that of her husband. If she recovered any judgment the benefit thereof belonged to him. That unity has long since been destroyed by legislation in this state and in every other state. Hence courts in denying the right of a wife to sue her husband have been compelled to resort to another reason why such suit should not be permitted. The personal immunity which protects the husband is based simply on the policy of preserving domestic peace and felicity. Kaccorowski v. Kalkosinski (Pa.) 184 Atl. 663, 104 A. L. R. 1267; Koontz v. Messer, 320 Pa. 487, 181 Atl. 792, 794. In other words, the denial of the right to sue is based on public policy. The same public policy is invoked in suits between a minor child and his parents, and in suits by a parent against his minor child, and even in other suits between close relatives. See notes, 31 A. L. R. 1157, 71 A. L. R. 1071, 72 A. L. R. 453, 123 A. L. R. 1020. Hence a suit by a wife against a husband stands on the same footing and is governed by the same principle as a suit by a child against his parent or parent against a child, and it has been held that a minor child may sue the parent in case of the existence of liability insurance or indemnity to protect the latter. Lusk v. Lusk, 113 W. Va. 17, 166 S. E. 538; Dunlap v. Dunlap, 84 N. H. 352, 150 Atl. 905, 71 A. L. R. 1055; Worrell v. Worrell (Va.) 4 S. E. (2d) 343. It is apparent that if the rule of these cases is sound, no reason exists why a wife should not sue her husband in case that he and the persons whom he injures are protected by a policy of liability insurance. What was said in Rozell v. Rozell, supra, which was a suit between brother and sister, is applicable here. The court stated:

"Legalistic doctrines and ancient traditions like those of identity of husband and wife and family unity

between parent and child and other members of the household and intimate legal or social relationship between others as affecting the question of the propriety for allowing suit for personal injuries by one against another are and have been vanishing with the advent of modern means of transportation and the spread of insurance against liability of the wrongdoer and protection for the sufferer. We cannot bury our heads in the sand and ignore the new tendencies and conditions so notorious. Insurance as protection to the sufferer is now a matter of common knowledge."

In Lo Galbo v. Lo Galbo, 138 Misc. 485, 246 N. Y. S. 565, involving a suit between a father and an emancipated child, the court stated:

"I do not feel that, under present day conditions, particularly in reference to automobile accidents, the question of public policy, which has been the basis of the common-law rule in respect to this sort of actions, should longer be applied. It is a matter of common knowledge that a great proportion of owners of automobiles are protected against damages by insurance, and that in such case no question of public policy could possibly be involved (excepting only in cases of fraud in the action itself) ; and resort to the old common-law doctrine established in the aid of maintenance of family relationship would not, in automobile cases, be sound public policy, and might and usually would result in the defeat of the very purpose for which the rule was at common law maintained. Were the matter before me de novo, I would be in favor of the abrogation of the rule in its entirety, at least in automobile cases. A new condition has arisen through the use of the automobile where the balance has changed, and public policy urges a modification of this rule."

In Lusk v. Lusk, supra, the court stated among other things:

"But a different situation arises where the parent is protected by insurance in his vocational capacity. The rule followed in the Securo case (Securo v. Securo, 110 W. Va. 1, 156 S. E. 750) concedes the commission of a civil wrong on the child by the parent, but palliates

the wrong (in case of passive negligence) in the interest of parental discipline and control and of domestic harmony. A wise provision when so confined and where pertinent to the case. McCurdy, 43 Harv. L. R. 1079, sec. 5. But as was said in the case of Dunlap v. Dunlap (N. H.), 71 A. L. R. 1055: 'The law does not make fetishes of ideas,' and we must not exalt this rule above ordinary common sense. A maxim of the law (and of the ages for that matter) is when the reason for a rule ceases the rule itself ceases *(cessante ratione legis cessat ipsa lex.)* There is no reason for applying the rule in the instant case. This action is not unfriendly as between the daughter and the father. A recovery by her is no loss to him. In fact, their interests unite in favor of her recovery, but without hint of 'domestic fraud and collusion' (charged in some cases). There is no filial recrimination and no pitting of the daughter against the father in this case. No strained family relations will follow. On the contrary, the daughter must honor the father for attempting to provide compensation against her misfortune. Family harmony is assured instead of disrupted. A wrong is righted instead of 'privileged.' ' "

In Dunlap v. Dunlap, supra, the court stated in part:

"The defense being based upon the proposition that there will be family trouble because of the adversary state of mind between parent and child, created by the prospective gain to the child at the expense of the parent, anything which shows that, to the knowledge of the parties, there is no substantial prospect of such loss, destroys the foundation for the defense. It cannot be concluded that a result will follow from a nonexistent cause. * * * The excuse being based upon the policy of the law to preserve family accord and parental authority, anything which demonstrates that the suit will not interfere with those matters proves a difference in kind. The distinction is as plain as that between the cases of the emancipated and the unemancipated. * * * It is suggested in argument, and in some of the cases wherein liability has been denied, that these suits would never have been brought if there had been no insurance. This is undoubtedly true, but the real significance of the statement has been disregarded. The fact

that suits are brought under these circumstances only has, in and of itself, no bearing upon the issue whether a wrong has been committed. But it is of large significance as an answer to the claim that filial loyalty is not a sufficient protection from ungrateful action against worthy parents. Experience in the matter is perhaps still too limited to furnish reliable proof; yet the fact that there appears to have been no suits, save for malicious injuries, before insurance was known and used, coupled with the recent institution of actions for negligence where there is insurance, points with reasonable certainty to the answer to the prophecies of untoward results to follow any holding that the parent is accountable to the child. It shows that suits which would harass the parent, impair his authority, and disrupt the home, are not likely to be brought."

In the case of Worrell v. Worrell, (Va.) 4 S. E. (2d) 343, it appears that the statute required motor carriers to take out indemnity insurance, protecting passengers injured by negligence. The defendant was a motor carrier, who carried the insurance required by the statute. He was also the father of the plaintiff, his daughter, who was injured in a collision of her father's bus and a motor truck. The court quotes at length, with approval, from Lusk v. Lusk and Dunlap v. Dunlap, supra, and as held in those cases, permitted such action, stating in part that "reason is not only the life of the law, but the inspiration and glory of the law. As reason is affected by facts and circumstances, so are legal principles based thereon. If that were not so, the elementary and fundamental principle and aim of the law to provide justice and fair dealing would be hopeless of attainment."

The Supreme Court of Minnesota, in Strom v. Strom, 98 Minn. 427, 107 N. W. 1047, held that a wife could not sue her husband for tort. In the later case of Kyle v. Kyle, 210 Minn. 204, 297 N. W. 744, the court, hav-

ing before it a case in which the husband had liability insurance, stated:

"We are not unmindful of the fact that the growth of the motor vehicle traffic since the decision of Strom v. Strom, 98 Minn. 427, 107 N. W. 1047, has multiplied the hazards of life and limb to which all are exposed. This makes it necessary for every owner of such vehicle to carry insurance against loss occasioned by the negligence of the one he permits to operate the same. If such owner be married, no doubt he desires that his wife and children should be protected against his or his agent's negligent operation of his automobile. The suit against him and his insurer by his wife or child who has been injured by the negligent operation of his car would not tend to any disturbance in the family relation."

On account of the previous decision above mentioned the court added: "But these and other considerations are for the legislature." We have no such previous decision which would hinder us in now adopting a just rule.

Are these rules and principles sound? It has been held that the existence of liability insurance should not make any difference. Schneider v. Schneider, 160 Md. 18, 24, 122 Atl. 498, 72 A. L. R. 449; Ellis v. Collins, 237 Mich. 175, 211 N. W. 88; 52 A. L. R. 1118; Lund v. Olsen, 183 Minn. 515, 237 N. W. 188; Turner v. Carter, 169 Tenn. 553, 89 S. W. (2d) 751; Norfolk Southern Ry. Co. v. Gretakis, 162 Va. 597, 600, 174 S. E. 43; but see Worrell v. Worrell, supra. In Luster v. Luster (Mass.) 13 N. E. (2d) 438, the court did not pass upon the question with finality, though intimating that the rule of the cases just cited should apply. That rule is best stated in Ellis v. Collins, supra, by the Michigan court. The court said, after stating the rule that a child should not sue his parent:

"Plaintiff's counsel recognize this as a rule of the common law, but they argue that modern business

methods have so changed with the coming of the automobile and the insurance thereon that the common-law rule should be modified to allow minors to recover against their father for torts, inasmuch as insurance companies promise to reimburse the insured for any judgment gotten against him for injuries caused by the automobile. Perhaps there is a spice of good sense in this, but, if the rule is to fade away because the reason is gone for its existence, what will we say as to boys who are injured while working on farms or in industrial plants, by reason of the negligence of their fathers? In these cases there is as much need of the common-law rule as there ever was. If this rule is to go out or be modified we think it should be done by the legislature rather than by us."

It may be noted that the court thought that if the action by a child against his parent were allowed in cases of the existence of liability insurance it should be allowed in all cases. But why? In West Virginia, as we have seen, the action is allowed in case of the existence of such liability insurance. It is not allowed where no such liability insurance exists. Poling v. Poling, 109 W. Va. 705, 179 S. E. 604. That is at least logical. The reasoning of the Wisconsin case is based on a fallacy. The court assumed as an incorrect premise that no action lay merely because it was one by a child against his parent. It completely lost sight of the principle upon which the rule is based, namely, that domestic tranquillity should not be disturbed. Clearly, an action which is calculated to disturb the peace and harmony of a family is as distinct from the action where that is not true as day is from night, and it is apparent, as already mentioned, that where laibility insurance exists to protect against accidents no disturbance of such peace and harmony can arise by attempting to collect on the insurance. It is not actually necessary to take new premises in such case and start afresh. All that is really necessary is not to start from incorrect premises and not to forget the old premises, or founda-

tion, namely, that in cases in which domestic peace and tranquillity is disturbed or a tendency exists to that end, no action will be allowed. But that is no reason whatever why an action should not be allowed to recover on an insurance policy paid for and taken out for the express purpose of protection and in which no danger exists which is at the basis of the disallowance of such actions. It is not the existence of insurance which creates a cause of action in such case, as suggested by the able court in Luster v. Luster, supra. The cause of action is created by the wrong against the plaintiff, and a remedy should exist for that wrong, unless public policy forbids it, as is the case where domestic tranquillity is disturbed. When insurance exists, no public policy forbids such action, and the general rule should apply that for every wrong there is a remedy. 1 C. J. S. 969; Rozell v. Rozell, supra. In other words, the relationship of husband and wife constitutes a *defense,* exception or bar, in the ordinary action in tort, on the ground of public policy. It should not be a defense, exception or bar in cases in which such public policy has no basis.

It is claimed that to permit actions in such cases would lead to fraud and collusion. That there is danger of that cannot, of course, be denied. But so far as we know, no right of action has been denied on that ground alone, though it has been stated that the relationship tends to affect the credibility of the parties. Kalamian v. Kalamian, 107 Conn. 86, 139 Atl. 635. To deny the right to bring such actions upon the sole ground of the possibility of fraud and collusion would require the denial of a right of action in many other cases where it has been allowed. In Schubert v. Schubert Wagon Co., 249 N. Y. 253, a wife sued the master of her husband for injuries sustained while riding in the defendant's car, driven by plaintiff's husband. A recovery was allowed, although the master might be able to

recover over against the husband. In such case the danger of fraud and collusion existed, just as in a case like that at bar. Danger of fraud and collusion would exist in actions brought by a brother against his sister, between an emancipated son and his father, between grandparent and grandchild, or even between intimate friends,—all of which actions have been allowed. Rozell v. Rozell, supra. As remarked by the writer in 30 Law Notes 166, "A man pays for insurance to indemnify any person whom he injures by his careless driving. What is the inequity of construing that provision to extend to indemnification of his wife thus injured?" And the Supreme Court of Oklahoma stated in Courtney v. Courtney, supra:

"A man pays for insurance to indemnify any person whom he injures by his careless driving, and if it is intended to except his wife from such indemnification, such intent can very easily be expressed in the contract. See 4 Wisc. L. Rev. 37; 30 Law Notes 165; 4 Fordham Law Rev. 475, 479. And as to the question of fraud, it has been very logically submitted that no such case should be saddled with the presumption of fraud ab initio. See 43 Harvard L. R. 1022, 1049, Kalamian v. Kalamian, supra (107 Conn. 86, 130 Atl. 635)."

Another reason just as persuasive as that already mentioned leads to the same conclusion. In a suit by a wife against her husband the latter is but a nominal— a technical—party, when he is protected by liability insurance. The real party defendant is the insurance company, and thus again the reason of the rule denying the right to sue utterly fails. It is stated in Luster v. Luster, supra, that "the proceeding is still in theory an adversary one, and for various reasons it may be such in fact." But that involves merely a matter of procedure. I do not think that courts lack the power to enforce a substantive right within its proper limitations, and confine recovery to the amount covered by the liability insurance policy. Nor do courts, in my

judgment, lack power to enforce subsidiary rules which might apply in such actions,—for instance, that the jury should not be advised of the existence of insurance,—for all questions relating to that matter may in such a suit be determined by the trial judge alone.

My view, accordingly, would lead to a reversal of the judgment herein, if it appeared herein, that the defendant had liability insurance, protecting him and the persons injured by him. If the plaintiff in this case had left out the allegation, as she might have done, that defendant and plaintiff are husband and wife, the petition would, of course, have stated a good cause of action. In that case the relationship would have been a matter of defense, and if alleged in the answer would prima facie have stated a good defense in the absence of any explanation. But a reply, setting up the existence of such liability insurance, would have overcome the defense set up in the answer—it would have been a good reply. That, however, was not the course pursued herein. Plaintiff alleged the relationship of husband and wife, and in view of that fact embodied in the petition a prima facie defense. It did not mention the existence of liability insurance and for that reason did not state a cause of action, or, to speak more accurately, failed to show that the prima facie defense is not a bar to the action. When a demurrer is interposed, the sufficiency of the petition is ordinarily tested by the allegations contained therein, and not by any extraneous matters. 49 C. J. 423. Some of the courts have made an exception to the rule, and consider admissions which are made by the parties or counsel in the case. 43 C. J. 423. Perhaps other exceptions will be made from time to time as the justice of the case may require. We need not make any exception in this case, for the reason, as mentioned in Melvin v. Melvin, 8 Cal. App. 684, 97 Pac. 696, that the affirmance of the judgment herein will not bar the plaintiff from bringing another

action in which the petition will contain the proper allegation in reference to liability insurance, which will nullify the prima facie defense raised by the relationship of the parties. The statement in the California case is made upon the theory that "it is hardly necessary to say" that when an essential element is omitted in the petition in the first action, it may be supplied in another action without danger of the application of the rule of res judicata. That rule is stated as the correct rule in 2 Black on Judgments (2nd ed.) Sec. 707; 2 Van Fleet's Former Adjudication, Sec. 306; Freeman on Judgments (5th ed.) Secs. 745-748; 1 Herman, Estoppel and Res Judicata, p. 322; 34 C. J. 794, 797, 798, 800, 823; 15 R. C. L. 986; 30 Am. Jur. 947; 41 Am. Jur. 470-471; Restatement of the Law of Judgments, comments (c) and (e) to Section 50. The cases are collected in Notes 13 A. L. R. 113 (d) ; 106 A. L. R. 444 (d). The rule is in consonance with the rules governing dismissals and non-suits. See, however, Price v. Bonnifield, 2 Wyo. 80; Hennesey v. Ry. Co., 24 Wyo. 305. The Hennesey case, based on the rule that what might have been alleged, should have been alleged, cites Kentucky and Illinois cases in its support. But the cases in these states support the general rule above mentioned. Cox v. Simmerman, 256 Ky. 583; People ex rel. v. R. R. Co., 307 Ill. 265. Nevertheless, I am not prepared to say that the Hennesey case, an action for negligence, did not reach the right result, particularly under the facts of that case. The court cites sections from Black and Van Fleet other than those above mentioned, and there is nothing in the opinion which indicates that the court meant to take a position contrary to that taken by these authors in the sections specifically mentioned above. The Bonnifield case is readily distinguishable from this case. The rule that all matters should be embraced in any one action, and ended in one, which might be embraced therein, applied in the Hennesey

case, should play its proper part in juristic thinking, but, as often mentioned in connection with other matters would or might, if carried to its logical extreme, lead to undesirable results. The rule is a procedural one, and should not be judged by a standard of absolute invariability, since we should strive after the golden mean, even though we know that to be just beyond our reach. An assumption of the Bench that every member of the Bar is or should be one hundred per cent efficient is, possibly, even in this age of high intellectual attainments, not altogether conducive to reaching the ends of justice and might leave in its wake wrecks equalling in number the wrecks strewn along the paths of common-law pleading. In the case at bar, for instance, there can be no doubt that the lack of proper pleading is due to a justifiable and excusable mistake. That is apparent, when we consider the different opinions written in this case. However that may be, as I have already stated, a case involving liability insurance taken out by a husband to protect himself and those whom he injures is, in my judgment, a separate case, entirely distinct from one in which a husband is sued by his wife in an ordinary action of tort. A new issue is then brought into the case, which, as in the analogous case of Terry v. Hammond, 47 Cal. 32, makes a different cause of action; and in such case, the husband is but a technical, nominal party. His position in such case is similar to one who is sued as a trustee of a third party, and who is sued in his capacity as trustee, in which case, he is a different party from the one in a case brought against him individually. 30 Am. Jur. 956.

By reason, however, of the fact that the petition contains a prima facie defense to plaintiff's action, without explaining and overcoming it, I needs must concur in the affirmance of the judgment herein, leaving plaintiff the right to bring another action, as herein explained, and permitting her to recover, if she can

properly meet the conditions of the guest-statute of this state. In other words, I am in accord with Mr. Justice Kimball in so far that if such liability insurance as herein mentioned exists, she is entitled to sue.

KIMBALL, Ch. J.

At common law actions in tort between husband and wife were impossible. A rule of parties was sufficient to prevent them during coverture. A wife had no procedural existence apart from her husband. This difficulty as to parties does not exist under our code. Section 89-504, R. S. 1931, provides that when a married woman is a party, it shall not be necessary to join her husband with her except where that would be necessary without reference to the fact of marriage. Section 69-103, of the Married Women's Act, has the same effect according to the view expressed by Judge Riner. I think this section has a broader significance than Judge Riner is willing to give it, but at this point I am assuming that his view is correct.

Before 1876, there seem to have been no such actions in England, and there was some doubt whether there was any reason, besides the procedural rule, to prevent them. In that year it became necessary to decide the question in a case brought by a divorced wife against her former husband for beating her before the divorce. Phillips v. Barnet, L. R. 1. Q. B. D. 436. It was held that the action did not lie. It has since been generally conceded that the common law reason for the wife's disability to sue her husband in tort was stated correctly in that case by Justice Blackburn, a great common law judge. I quote from his judgment:

"I was at first inclined to think * * * that the reason why a wife could not sue her husband was a difficulty as to parties; but I think that when one looks at the matter more closely, the objection to the action is not

merely with regard to parties, but a requirement of the law founded upon the principle that husband and wife are one person."

Here the Justice cited authorities, including Coke's Institutes and Comyns' Digest, explaining common law restrictions on property transactions between husband and wife. He then continued:

"These authorities show that the objection to the action is, not because it is one in which husband and wife ought to be joined, but because husband and wife cannot contract with or convey to each other . . . The reason, therefore, why the wife cannot sue the husband for beating her must be because they are one and the same person, and the same reason exists in criminal law, where a woman cannot be convicted of larceny though she has in fact carried away her husband's goods. Other instances might easily be given, all showing that the reason is not the technical one of parties, but because, being one person, one cannot sue the other."

We may safely accept this language as a sufficient statement of the reason (in addition to the difficulty in procedure) for the common law rule. I assume that the legislative assembly of 1869 was familiar with the common law, and realized that in passing the Married Women's Act they made fundamental changes. The act, as we said in Christensen v. McCann, 41 Wyo. 101, 111, 282 P. 1061, is "a good example of the more liberal legislation releasing married women from the rigors of the common law." It established a new marital status that does not recognize the common law fiction that husband and wife are one person. The same legislative assembly declared that the common law of a general nature and not inapplicable shall be the rule of decision when not inconsistent with our laws. § 26-101, R. S. 1931. It is a maxim of the common law that when the reason of a rule ceases, the rule itself should cease. Naab v. Smith, 55 Wyo. 181, 189, 97 P. (2d) 677.

The Married Women's Act includes not only those provisions that make the wife a separate person for the purpose of acquiring, holding and transferring property, of contracting and incurring liabilities, of working and engaging in business for her separate benefit, but also the provision (section 69-103, mentioned above) that she "may, while married, sue and be sued in all matters having relation to her property, person or reputation, in the same manner as if she were sole." If this section stood alone, or if it were a part of the code of procedure, I should be inclined to hold with Judge Riner that it was intended only to overcome the common law difficulty as to parties. In my opinion, however, the section, as a part of the Married Women's Act, goes further than that. It first says that she may sue "in all matters having relation to her property, person or reputation," which I take to be a statement of the extent of her right. Then follow the words "in the same manner as if she were sole," which would seem to permit suits against her husband, since his relation to her is excluded by the hypothesis that for legal purposes she is single. See remarks of Lord Summer, Edwards v. Porter, (1925) A. C. 1, 41.

If I am right in regard to the meaning of section 69-103, there would be nothing more to be said. The present action could be maintained by authority of the statute. If I am wrong, and that section was intended to regulate procedure only, and must, therefore, be put out of consideration on the question of the right of plaintiff to sue her husband, we are still confronted with the fact that by other sections of the Married Women's Act the reason of the common law rule rejecting such actions has disappeared. That being so, the rule cannot survive unless we can find some other reason for continuing it under present-day conditions. See Lippman, The Breakdown of Consortium, 30 Col.

L. Rev. 651, 672, quoting Holmes, The Common Law, p. 5; Naab v. Smith, 55 Wyo. 181, 189, 97 P. (2d) 677.

It has sometimes been said that to permit a wife to sue her husband would cause the courts to be filled with trivial cases. There is no evidence that this prophesy has come to pass in any of those states where such actions are permitted. If the wife is permitted to sue her husband it does not follow that she can sue him for every act that would be a tort if committed against an unmarried woman. Husband and wife, because of an implied privilege or license arising from the marital relation, should have in their conduct toward each other a freedom of speech and action that would not be permitted between strangers. See Vernier, Am. Family Laws, § 180 p. 269; McCurdy, Torts between Persons in Domestic Relation, 43 Harvard L. Rev. 1030, 1055; Bushnell v. Bushnell, 103 Conn. 583, 587, 131 Atl. 432, 44 A. L. R. 785; Allen v. Allen, 246 N. Y. 571, 584, 159 N. E. 656, 661; The Queen v. Jackson (1891) 1 Q. B. 671, 679, 683.

Many of the cases that have considered the question of the right of a wife to sue her husband for assault and battery were commenced after the parties were divorced. The leading cases, Phillips v. Barnett, supra, and Abbott v. Abbott, 67 Me. 304, were of that kind, and in each there was an intimation that for the cruelties suffered the wife could have obtained compensation in the nature of alimony in the divorce action. Other cases have suggested that divorce or a criminal prosecution is an adequate remedy for an assault by the husband on the wife. See Thompson v. Thompson, 218 U. S. 611, 619. It may be that under our laws a decree of divorce ought to be taken as a final settlement of all claims of the parties against each other for damages, but, of course, that question is not now before us, and the cases just cited are irrelevant except to show that at least one of the reasons sometimes given for denying

to a wife the right to sue her husband for personal injuries, can have no application in actions for negligence which is neither a crime nor a ground for divorce.

There is, of course, no rule of law or morals that gives a husband the right to inflict a personal injury on his wife. "A trespass, negligent or willful, upon the person of a wife, does not cease to be an unlawful act, though the law exempts the husband from liability for the damage . . . . . Unlawful the act remains, however shorn of a remedy." Cardozo, Ch. J., in Schubert v. August Schubert Wagon Co., 249 N. Y. 253, 256-257, 164 N. E. 42, 64 A. L. R. 293. The injury may cause substantial increase in "necessary expenses of the family" which, under section 69-101, R. S. 1931, are chargeable upon the wife's separate property. It may require that she incur obligations which, under section 69-102, may be enforced against her as if she were unmarried. It may render her unable to work or engage in business as she is entitled to do for her separate benefit under section 69-105.

The main reason given for the continuance of the common law disability after the enactment of married women's acts rejecting the fiction of unity, is that tort actions between husband and wife for personal injuries will disturb the peace and tranquillity of the home. The question is one of public policy that ought to be decided by the legislature. Courts have no peculiar fitness to answer it, and are likely to give undue weight to the personal views of the judges, who (it has been said) are more to be trusted as interpreters of the law than as expounders of public policy. Winfield, Public Policy In English Common Law, 42 Harvard L. Rev. 76, 97. In the absence of a rule of public policy established by statute or previous judicial decisions, we should not formulate one unless we find that is so generally held and so obviously sound that it is in fact a

part of the law of this state. See Mertz v. Mertz, 271 N. Y. 466, 472, 3 N. E. (2d) 597, 108 A. L. R. 1120.

I think, as has often been said by competent writers on the subject, that at the stage in which a wife wishes to sue her husband for damages for a willful tort, there is not much domestic tranquillity left to be disturbed. See Vernier, supra; McCurdy, supra, at p. 1052; Haglund, Tort Actions between Husband and Wife, 27 Georgetown L. J. 697, 892, 917; Albertsworth, New Interests in the Law of Torts, 10 Calif. L. R. 461, 472; Note, 38 Harvard L. R. 383, 389; Harper on Torts, § 288.

The public policy argument is not supported by any background of facts or experience. There is no evidence than tranquillity in homes has been disturbed by such suits in those states that permit them, or that it has been preserved in other states by denying them. The legislatures have been indifferent, apparently willing to let the decisions of the courts stand, except in New York where the policy of denying such actions, as established by court decision of 1882, was reversed by Ch. 669, p. 1520, Laws of 1937.

If this supposed public policy prevents only personal injury actions, it would seem curiously inconsistent, as suggested in Brown v. Brown, 88 Conn. 42, 46, 89 Atl. 889, 52 L. R. A. (N. S.) 186, that a wife could sue for a broken promise and not for a broken arm. In the present case, the plaintiff might be entitled to sue for damages to the dress she was wearing at the time of the accident, and denied the right to sue for the serious injury to her person. See Note, 47 L. Q. Rev. 163, 164.

As explained by Judge Blume, there is no danger of domestic tranquillity being disturbed by an action for negligence by a wife against her husband who carries indemnity insurance. Negligence actions by wives against husbands, without any noticed exception, have

involved automobile accidents, and have arisen since it has become a common practice for owners of such vehicles to carry insurance that serves the double purpose of protecting them, and compensating those whom they or their agents may injure. It is natural and commendable that an owner who is the head of a family should want this protection to extend to the members of his family. See Kyle v. Kyle, 210 Minn. 204, 207, 297 N. W. 627. Actions against defendants who have provided for such protection may suggest a danger of fraud, but I am satisfied with Judge Blume's discussion and conclusion on that point.

The record in the present case does not show that defendant is, or that he is not, protected by insurance. There is no reason why it should unless, as Judge Blume argues, the suit ought to be permitted if the defendant carries insurance, and rejected if he does not. But there are many cases, which I do not care now to question, holding that in the negligence action the fact that defendant husband is insured is not relevant for any purpose, evidently on the theory that the risk insured against is the liability that would be imposed by law on the defendant if he were not insured. On authority of these cases, a court that formulates a rule of public policy in order to continue the common law disability of a wife to sue her husband for injury to her person, will prevent a large class of actions that will have no tendency to disrupt the family peace.

I should permit the present action, because I believe our married women's statutes abolishing the fiction of marital unity leave no basis for the common law disability of the plaintiff to sue, and there is no reason for continuing the disability under modern business and social conditions. My associates disagree with me, and concur with each other in affirming the judgment dismissing the action. Judge Blume believes that the only defect leading to that result is the absence of an alle-

gation that defendant is protected by insurance, and discusses the right of plaintiff to bring another action on a petition containing that allegation. I do not care to express an opinion on the right of plaintiff to bring another action until she undertakes to do so.

Judgment affirmed.